## JOHN McBROWN v. JOSEPH MORRIS et al.

PRE-EMPTION—PRIOR POSSESSION OF PUBLIC LANDS—EJECTMENT.—The land in controversy was within a larger tract, which for nearly twenty years had been inclosed by fences, and occupied, and used for dairy purposes by the plaintiff and his tenants. The defendant—who was a qualified pre-emptor—entered with the intention of pre-empting the land, and within due time filed his declaratory statement.

*Held*—in an action of ejectment—That the defendant did not acquire a right
to pre-empt the land, and that the plaintiff was entitled to recover.

Id.—Id.—Id.—Construction of Statute.—Section 2257 of the Revised
Statutes does not contain anything more than was enacted by the Acts
of Congress on the subject of pre-emptions previously in force.

Id.—Id.—Id.—Id.—The Act of Congress of March 3d, 1807, entitled "An
Act to prevent settlement upon lands ceded to the United States until
authorized by law" (1 Lester's Land Laws, 28), provides for the removal
of intruders from the public lands by the President of the United States,
and invests him with authority to act on behalf of the United States in
his discretion, but does not enlarge the rights of the defendant in this
case.

Appeal from a judgment for the plaintiff and an order denying a new trial in the Superior Court of Marin County. Temple, J.

A petition for hearing in Bank was filed after judgment in this case, and denied.

*Geo. Pearce* and *Jas. F. Stuart*, for Appellant.

Defendants in this class of cases have usually to contend with a familiar general rule, viz.: That "he that has possession of land, though it be by disseisin, has a right against all men; but him that has right 'for' till some act be done by the rightful owner to divest this possession and assert his title, such actual possession is *prima facie* evidence of a legal title in the possessor," etc. And "when the right is equal, the claim of the party in actual possession shall prevail." The right of the disseisor in possession "continues only till some act be done by the rightful owner to divest this possession." Of course, in the very nature of the case, the plaintiff respondent could not be ousted, but such possession as he had was divested by the acts of the officers of the true owner, the United States. The entry upon the land by the United States Surveyor, sectionizing the land, making plats and returning the same to the proper local Land Office, receiving and filing the declaratory statement, and the fees allowed by law therefor, by the Register and Receiver, are acts which in their nature divest any supposed possession of the plaintiff respondent, particularly if read and construed in the light of the Act of Congress of 1807, cited above. The defense in this case has been met at every stage of the case with two cases as authority in.

favor of the plaintiff respondent's right to recover as against the theory of the defense. (*Atherton* v. *Fowler,* 6 Otto, 513; *Hosmer* v. *Wallace,* 7 id. 579.) We submit that neither of these cases is authority against us, for the following reasons: Atherton's testator, Page, had made a settlement in person on the land, and was an actual inhabitant, was an applicant to purchase, and had a preferred right to purchase, which he was prosecuting with diligence, and at the time the hay (subject of the action) was cut, and at the time the case was tried, had title to the land on which the hay was cut. (*Atherton* v. *Fowler,* 6 Otto, 516, and Act of March 3d, 1863, there cited.) In the case at bar the respondent not only never made a settlement in person on the demanded premises, never did inhabit the same, or any part of it, but was absolutely disqualified to enter by pre-emptiom or homestead. In *Atherton* v. *Fowler,* the land had been withdrawn from the operation of the general pre-emption law by the act of March 3d, 1863, above cited. (*Hastings* v. *McGoogin,* 27 Cal. 84; *Page* v. *Hobbs,* id. 488; *Hutton* v. *Frisbie,* 37 id. 475.) It will be observed, however, that all the cases in which it was so impliedly or directly held arose and were decided on facts which occurred prior to the revision of the Statutes of the United States, in 1873; and in the Revised Statutes Congress declared that all lands belonging to the United States shall be subject to the right of pre-emption. (Rev. Stat., § 2257.) In the case of *Hosmer* v. *Wallace,* the claimant Hosmer never made a settlement in person on the disputed tract, except while the land was reserved, and hence acquired no right of pre-emption, and is, therefore, not an authority against the defendant in this case. Nor do we think the subsequent case of *Hosmer* v. *Duggan,* decided by this honorable Court in December, 1880, an authority against us, for the reason that in that case Congress, by act of 23d of July, 1866, granted Duggan a preferred right of purchase, which it might do. (*Hosmer* v. *Wallace,* 7 Otto, 575; *Frisbie* v. *Whitney,* 9 Wall. 187.) In conclusion it is respectfully submitted that in all the cases where it has been intimated or held that a pre-emption right could not be initiated on land in the actual possession or occupation of another, such possession or occupation was not only actual, but was by par-

ties or persons possessing all the qualifications of pre-emp-
tioners, and who were applicants to purchase.

*George A. Nourse*, for Respondent.

The land in question being occupied and possessed by
plaintiff, it was not open to pre-emption, or homestead settle-
ment, or entry. (*Atherton* v. *Fowler*, 96 U. S. 513; *Hosmer*
v. *Wallace*, 97 id. 575; *Trenouth* v. *San Francisco*, 100 id.
251; *Davis* v. *Scott*, 56 Cal. 165.)

THORNTON, J.:

This action was brought to recover possession of a parcel
of land situate in the County of Sonoma.

The cause was tried by the Court, and the plaintiff had
judgment.   The defendants moved for a new trial, which was
denied, and they prosecute this appeal from the judgment and
the order denying a new trial.

The findings of fact and conclusions of law, which appear
in the record, are as follows:

"1. At the time of the entry alleged in this complaint, made
by defendants on the land described in the complaint herein,
said parcel of land was, and still is, and for many years had
been, within a tract of some one thousand five hundred acres
or more, which had then been for nearly twenty years occu-
pied, controlled, and used for dairy purposes by the plaintiff
and his tenants.

"This larger tract is inclosed by fences, of which more than
two thirds were built at the expense of plaintiff, for the pur-
pose of inclosing this tract, at different times, from 1859 to
1865, and the remainder were built by co-terminous occupants
of adjoining land, at times as early or earlier.

"On this larger tract have grazed, for about twenty years,
some two hundred cows or thereabout, which, during that
time, the plaintiff has leased to his tenants with the land con-
stituting said larger tract, and which still graze thereon.

"Upon said tract plaintiff constructed, has had for many
years, and still has, a dwelling-house with the other buildings
necessary for carrying on a dairy as aforesaid, which, during
the time of his said occupation of the land, have been and

still are occupied and used for residence and for dairy purposes by his said tenants.

" 2. In the month of July, 1878, defendant, Joseph Morris, entered upon the demanded premises described in the complaint, with the intention of making a pre-emption settlement thereon, and of entering the same under the pre-emption laws of the United States.

" To go upon said land, he was obliged to go through or over a fence, or to pass through a gate, kept by plaintiff and his tenants, in the easterly fence of this larger tract across a roadway leading across a portion of said larger tract, over which roadway the occupants of this land, and others residing in the neighborhood, have for many years traveled to and from Petaluma, their market-town.

" It is, and has always been, the custom of persons so traveling to close said gate after passing through.

" 3. After entering upon said premises described in the complaint, said defendant at once commenced the erection of a dwelling-house thereon, which he soon after completed, and into which he moved his family within a few weeks.

" He has made improvements on said land worth, in all, about two hundred dollars.

" He has resided in said house with his family ever since, and at the date of the commencement of this action occupied the same, and was then and still is in possession of the land described in the complaint.

" 4. Defendant's said entry upon said premises was made without the consent of the plaintiff or his tenants, or either of them, and against their wish ; and he was forbidden both by plaintiff and the tenants of plaintiff, who were then in possession of said larger tract, to enter upon the same.

" 5. Prior to the commencement of this action, the tenants of plaintiff, who were in possession of the said larger tract of land at the time of defendant's said entry thereon, executed and delivered in writing to the plaintiff a release to him of the parcel of land described in the complaint.

" As conclusions of law I find that

" 1. The plaintiff in this action was, at the commencement thereof the owner of and entitled to the possession of said demanded premises.

"2. Said premises were not, at the time of defendant's entry, and never have been, while in possession of the plaintiff and his tenants, open to settlement or entry under the pre-emption laws of the United States.

"3. As defendant Joseph Morris thus can not connect himself with the United States title, as he seeks to do in and by his answer, by reason of the said occupation and control of said land by plaintiff and his tenants, he, the said defendant, can not be heard to set up the title of the United States to said demanded premises, as against the plaintiff, and all the affirmative allegations of his answer become immaterial, and need not be found upon.

"4. Plaintiff is and was, at the commencement of this action, entitled to the possession of the land described in the complaint, and defendants' entry and residence thereon were and are a mere trespass."

A bill of exceptions shows that it was proved that the 'fif-teen-hundred-acre tract of land, mentioned in finding No. 1, was within the exterior boundaries of a Mexican grant or rancho called "Soulajule;" that said fifteen-hundred-acre tract was bounded on the north-west by another Mexican grant, called Rancho Laguna de San Antonio, and on the south and south-east by another Mexican grant, called Rancho Corte Madera de Novato, and on the east by lands in the possession of one Maack and Nisson.

"That about the 7th day of August, 1878, the United States Surveyor-General for California, by his deputy, was surveying the said fifteen-hundred-acre tract as public land of the United States, and the defendant, believing he had a right to, made a settlement on the land described in the complaint, as stated in the Judge's findings.

"That, on the 10th day of August, 1878, the said surveyor filed plats of his said survey in the United States Land Office for the district of lands in which said land is situate, namely, the San Francisco District.

"That, within ninety days after such plats were filed, the defendant duly applied for the lands described in the complaint as a pre-emption right, and was permitted to file and did file his declaratory statement, and pay the fees of the Regis-

ter and Receiver therefor, and the said Register and Receiver accepted the said fees and filed the said declaratory statement.

" That on the —— day of ——, 1878, the Honorable Commissioner of the General Land Office ordered and directed the said survey to be, and the same was suspended, and the plats thereof taken from the files of the said Land Office, upon the ground that the survey of the said Rancho Soulajule was not final.

" That on the 18th day of January, 1879, the survey of said Rancho Soulajule was, by order of the Honorable Commissioner, made final, and the lands of said Rancho Soulajule conveyed by letters patent on that day to Joshua S. Bracket, Pedro J. Vasques, Louisa D. Watkins, Geo. N. Cornwall, and Martin F. Gormley.

" That the said final survey of the said Rancho Soulajule excluded the said fifteen-hundred-acre tract and the lands described in the complaint, and that the said Rancho Soulajule and letters patent did not include the said fifteen-hundred-acre tract or any part of it.

" That, by order of the said Honorable Commissioner, the plats of survey, after correction, were, on the 5th day of February, 1879, restored to the files; and the defendant again, to wit, on the 7th day of April, 1879, again declared for the same land, and his statement was duly filed by the said Register and Receiver.

" The defendant further proved that the plaintiff was the owner of about three thousand acres of the said Rancho Laguna de San Antonio, and about eight hundred acres on the Rancho Corte Madera Novato, and adjoining the said fifteen-hundred-acre tract.

" That he, the said plaintiff, had ever since 1854, resided upon the two said ranchos, and had never resided upon the said fifteen-hundred-acre tract, or any part of it, and had taken and received as rent of the said fifteen-hundred-acre tract and dairy cows put thereon by him.

" The defendant also proved, that he possessed all the qualifications of a pre-emptioner, and was fully competent to pre-empt and purchase the land described in the complaint under the pre-emption laws of the United States.

" That he had not made other and further improvements on

the land, or cultivated the same, because he was served with an injunction forbidding it at the suit of the plaintiff herein issued out of the Nineteenth District Court of this State, which injunction was and still is in force."

The main question presented for decision in this cause is whether a person having all the qualifications of a pre-emptor can acquire a right under the laws of the United States, to pre-empt where he has made an entry and settlement on land within the inclosure of and in the possession and occupation of another, without his consent or the consent of those holding possession for him, and against his express prohibition where such other person has held possession for years of the land and used the same for grazing, erected a dwelling-house and other buildings thereon, and occupied it in the prosecution of dairying.

We think this question has been determined in the case of *Atherton* v. *Fowler*, 96 U. S. 513. In the case cited, an action of replevin was brought to recover hay cut upon the land on which it was claimed a valid pre-emption settlement was made. It was commenced by one Page, who died during its pendency, and the action was continued in the name of his executor, Atherton. The defendants entered on the land when in the possession of Page, which was inclosed with fences and was in actual cultivation. The entry was made without the consent or permission of Page or those having possession, but by forcibly driving them out. The hay for which the suit was brought was cut from meadows or grounds set in grass by Page.

The Court instructed the jury that "if plaintiff was in actual possession of the land when the defendants entered, there was no disseisin, and the subsequent possession of the defendants did not oust that of the plaintiff unless they found that they had entered in good faith with intent to pre-empt the land on which the hay was cut."

The Court also instructed the jury: "If you believe from the evidence that the defendants entered in good faith, with intent to pre-empt the land on which the hay was cut, and had actual possession of it at the time the hay was cut, your verdict should be for the defendants."

" The plaintiff also asked the Court to instruct the jury,

that if he was in the actual possession of the land, having cultivated it for several years previously, and the defendants broke through his inclosure without his consent, the entry was unlawful, though the land might be public land, the prior right of pre-emption belonging to him who had the prior and continued right of qossession. This the Court refused." (*Atherton* v. *Fowler*, 96 U. S. 515.)

The plaintiff excepted to those directions of the Court.

Commenting on these rulings, the Court said :

" In short, it is obvious that the case was made by the Court to turn on the assumption that the land was, in its then condition, liable to be pre-empted by defendants, against the wishes of plaintiff, and that, to effect the entry and cultivation necessary to establish the right of pre-emption, the defendants could, by force and violence, and by breaking into an actual inclosure, and by turning the plaintiff out, acquire such right of pre-emption, and at the same time a *bona fide* possession."

The Court then proceeds to state, that at the time the action was tried Page had obtained title to the land under the act of March 3d, 1865. This, it said, related back to the possession under the Vallejo grant, and the title in this action was not disputed. " It was simply a question before the Court in that trial, therefore, whether the intention to pre-empt the land changed what would otherwise have been a mere trespass into a *bona fide* possession which would defeat the present action."

Then referring to cases where two persons making settlement on different parts of the same quarter section of land, and presenting conflicting claims therefor, the settlement of the later of the two may be held to be *bona fide* for reasons adverted to, the opinion proceeds :

" But all these cases suppose that the parties began their possession and made their settlements and built their houses on lands not in the actual possession of another. It is not to be presumed that Congress intended, in the remote regions where these settlements are made, to invite forcible invasion of the premises of another, in order to confer the gratuitous right of preference of purchase on the invaders. In the parts of the country where these pre-emptions are usually made,

the protection of the law to rights of person and property is generally but imperfect under the best of circumstances. It can not, therefore, be believed, without the strongest evidence, that Congress has extended a standing invitation to the strong, the daring, and the unscrupulous to dispossess by force the weak and the timid from actual improvements on the public land, in order that the intentional trespasser may secure by these means the preferred right to buy the land of the Government when it comes into market."

That the Court intended to hold that such entry and settlement was unlawful, and vested no rights in the party making it to preëmpt the land, appears from the foregoing, but it is made clearer by a subsequent portion of the opinion, which we here quote:

"Unless some reason is shown, not found in this record, these were the persons entitled to make preëmption, and no one else. But suppose they were not. Does the policy of the preëmption law authorize a stranger to thrust these men out of their houses, seize their improvements, and settle exactly where they were settled, and by these acts acquire the initiatory right of preëmption? The generosity by which Congress gave the settler the right of preëmption was not intended to give him the benefit of another man's labor, and authorize him to turn that man and his family out of their home. It did not propose to give its bounty to settlements obtained by violence at the expense of others. The right to make a settlement was to be exercised on unsettled land; to make improvements on unimproved land. To erect a dwelling-house did not mean to seize some other man's dwelling. It had reference to vacant land, to unimproved land; and it would have shocked the moral sense of the men who passed these laws, if they had supposed that they had extended an invitation to the pioneer population to acquire inchoate rights to the public lands by trespass, by violence, by robbery, by acts leading to homicides, and other crimes of less moral turpitude."

In referring to the question first stated in the preceding extract from the opinion, the Court, after stating that they found no decision directly in point, and referring to a decision by Justice McLean and the case of *Frisbie* v. *Whitney*, 9

Wall. 187, in which were intimations, that no right could be acquired by such intrusion, the Court said: "In the present case we are met with that question directly in our way, and we are of opinion that it can not be done." A summary of the opinion then follows, which clearly shows the conclusion reached:

"It follows that the defendants could not have made any lawful entry on the lands where the hay was cut in this case; that no law existed which gave them any right to make such an entry; that they were mere naked trespassers, making an unwarranted intrusion upon the inclosure of another—an inclosure and occupation of years, on which time and labor and money had been expended—and that in such a wrongful attempt to seize the fruits of other men's labor there could be no *bona fide* claim of right whatever."

The Court manifestly came to this conclusion as to the legal character of the entry of defendants upon the facts of the actual possession, inclosure, and occupation of the land by Page, independent of the right which it appears the law had bestowed on Page to preëmpt and hold, as stated in the syllabus of the case, viz.: That no right of preëmption can be established by a settlement and improvement on a tract of public land, where the claimant forcibly intruded upon the possession of one who had actually settled upon, improved, and inclosed that tract, and that such intrusion, though made under pretense of preëmpting the lands, is but a naked unlawful trespass, and can not initiate a right of preëmption. The opinion of the dissenting Justices in *Atherton* v. *Fowler*, shows that in their view, such was the conclusion reached by the Court in that case.

This judgment in *Atherton* v. *Fowler* was approved and followed by the same Court in *Hosmer* v. *Wallace*, 97 U. S. 575, and *Trenouth* v. *San Francisco*, 100 id. 251. It was followed and approved by the Second Department of this Court in *Davis* v. *Scott*, 6 Pac. L. J. 699, and by the First Department in *Hosmer* v. *Duggan*, id. 615. Under these circumstances we regard the question as settled.

The occupation of the plaintiff in this case has been of long continuance, covering a period of about twenty years, during which time he inclosed the larger tract by fences, constructed

a dwelling-house with other buildings, and used it for a residence for persons holding possession of the land, and for carrying on a dairy business. The entry of defendant as expressly found was made without the consent of plaintiff or his tenants, or either of them and against their wish, and he was forbidden by them to make such entry. The findings of fact bring this case within the determinations of the cases above cited.

It is urged on behalf of appellant that the decisions above referred to have no application since the Revised Statutes of the United States went into effect, under which the defendant entered and made his settlement, that these decisions were made under laws differing in their provisions from those of the Revised Statutes in relation to pre-emptions on the public lands, and we are referred particularly to section 2257 of those statutes, by which it is provided that "all lands belonging to the United States, to which the Indian title has been or may hereafter be extinguished, shall be subject to the right of pre-emption, under the conditions, restrictions, and stipulations provided by law."

We do not find in this section anything more than was enacted by the Acts of Congress on the subject of pre-emptions on the public lands of the United States, in force for years prior to the adoption of the Revised Statutes. (See acts of 4th of September, 1841, 5 Stats. at Large, 455, and 30th of May, 1862, 12 id. 409, and of June 2d, 1862, id. 413, and especially § 10 of the act first cited, § 7 of act of May 30th, 1862, and § 1 of the last cited act.) The provisions of the Revised Statutes and of the Acts of Congress are substantially the same in reference to the lands subject to pre-emption. These Acts of Congress refer to all the public lands "*belonging to the United States*" as broadly as do the Revised Statutes—the first act cited relating to surveyed lands, the other two to unsurveyed lands. The exception of the lands not subject to pre-emption is the same in the Acts of Congress as in the Revised Statutes. (Cf. § 10 of Act of 1841 and § 2258 Rev. Stat.) See remarks of Miller, J., delivering opinion of the Court in *Atherton* v. *Fowler*, 96 U. S. 517. As far as the questions involved in this case are concerned, the Acts of Congress and the Revised Statutes refer to the same lands, and embrace both surveyed and unsurveyed lands.

Our attention is called to the Act of Congress of March 3d, 1807, entitled "An act to prevent settlements being made on lands ceded to the United States until authorized by law" (1 Lester's Land Laws, 28), and it is urged by appellant that under its provisions the respondent can not be considered as having any right to the possession of the disputed tract. This act is not alluded to in the cases above cited from the United States Supreme Court, and it is contended that these decisions would have been different, had it been brought to the attention of that Court.

This act provides for the removal of intruders from the public lands by the President of the United States through the agency of the Marshal, and also authorizes him (the President) to take such other measures and employ such military force as he may judge necessary and proper to effect such removal. Those who intrude and make settlement after the passage of the act are declared to have forfeited all right or claim, if they have any, which shall vest in the United States without any other or further proceedings. The proceeding is, under this act, summary, and its provisions are highly penal. In our judgment it merely invests the President with authority to act on behalf of the United States, in the discretion of the President, and does not operate to enlarge the rights of the defendant in this case. The proceeding by the President or the officer acting under his authority is one authorized by law. The intrusion of the appellant, under the comprehensive terms of the rule laid down in *Atherton* v. *Fowler* and the cases following it, would be just as lawless in the cases of intrusion specified in the act, as it was in the cases passed on in the causes referred to above.

We do not consider the provisions of the act applicable to this case.

It is our opinion that the judgment and order should be affirmed, and it is so ordered.

McKinstry, J., and Ross, J., concurred.