[No. 19540.   Department One.—April 2, 1895.]

WILLIAM McGUIRE, Respondent, v. MARCELLUS BROWN, Appellant.   W. A. DORN, Intervenor.

Water Rights—Act of Congress Confirming Water Rights—Right of Appropriator to Change Place of Diversion—Riparian Rights of Homestead Claimants.—The act of Congress confirming vested and accrued rights to the use of water for beneficial purposes, acquired by priority of possession thereof on the public lands, as against homestead settlers on those lands, does not justify a ditch-owner in shifting the point of diversion and the line of his ditch without the consent of a homestead settler on riparian lands, who has obtained a certificate of entry of such lands.

Id.—Construction of Act of 1866.—The terms of the proviso found in section 9 of the act of Congress of July, 1866, that whenever any person or persons shall, in the construction of any ditch or canal, injure or damage the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured therefor, does not authorize the construction of a new ditch or canal, nor grant rights of way where none existed before, nor confer additional rights upon owners of ditches subsequently constructed.

Id.—Rights of Homestead Settlers.—The right of a homestead settler who has made entry, but has not made final proof of residence and cultivation, or obtained a patent, amounts to an equitable interest in the land subject to the future performance of certain conditions, and, until forfeited by failure to perform the conditions, it must prevail not only against individuals, but against the government.

Id.—Decisions—Authority of Federal Supreme Court—Rights of Settlers as Against Appropriators of Water.—The former decisions of this court, to the extent to which they hold that the interest of a settler on the public lands under the pre-emption or homestead laws attaches as against the appropriator of water rights on his tract only as of the time of his final proof or of obtaining a patent, must be controlled by the decision of the federal supreme court to the contrary.

Id.—Rights of Appropriator.—An appropriator of water having the prior right to the use of water to the extent of an appropriation made

by his predecessors through a ditch maintained by them prior to defend-
ant's settlement upon riparian lands may maintain such prior right,
together with the right to maintain such ditch as against a subsequent
homestead settler, whose land is subject to a servitude for the support
of the ditch and water right.

Id.— Effect of Change of Location of Ditch— Abandonment. — An
improper and ineffective change of the location of a ditch as against the
rights of a homestead settler does not have the effect to lose the prior
right to the flow of the water which is not intended to be abandoned,
and whether he abandoned his property in the former ditch and the
right to lead water through the same is a question of fact to be deter-
mined under proper pleadings.

Appeal from a judgment of the Superior Court of
Ventura County and from an order denying a new
trial.

The facts are stated in the opinion.

*H. L. Poplin,* for Appellant.

*W. E. Shepherd,* and *Orestes Orr,* for Respondent.

*Blackstock & Ewing,* for Intervenor.

Britt, C.—The controversy which resulted in this
action arose between plaintiff and defendant concern-
ing the right to the use of water flowing in Cuyama
creek in the county of Ventura. One W. A. Dorn was
permitted to intervene, he asserting an interest in the
water superior to that of both the original parties; but,
as the court below found against his pretensions and
dismissed his complaint "without prejudice," and he
has not appealed, his claims are eliminated from the
case.

It appears from the record that in January, 1885, one
Beekman took possession of the northwest one-quarter
of a certain section 20, the same being unappropriated
lands of the United States, and shortly afterwards filed
his declaratory statement as a pre-emption claimant
thereon, paid the purchase price and obtained the re-
ceiver's final receipt some time in the year 1886, and in

June, 1891, the United States patent for the same was issued to him. At the time Beekman entered upon said land there was a ditch thereon constructed by a former occupant leading from a point on Cuyama creek within the boundaries of the northeast one-quarter of said section 20, and thence westerly across a part of such northeast one-quarter and upon said northwest one-quarter, by means of which ditch water was diverted from said creek and made to flow upon the latter quarter section. This ditch was repaired by Beekman in the spring of 1885, and was thenceforward used by him to divert said water for irrigation and other purposes on his said land—it having a capacity, the court finds, of ninety inches, which was filled when the creek afforded sufficient water, and exhausted the flow of the creek at the point of diversion when the supply was less than that amount.

In December, 1888, Beekman conveyed the land covered by his pre-emption claim—said northwest one-quarter of section 20—together with its appurtenances, to one Crawford, who entered into possession. Crawford then in May, 1889, *changed the point of diversion* of the ditch to a place about a quarter of a mile farther up the creek, eastward from the head of the old ditch, and dug a new ditch across the said northeast one-quarter, and upon the northwest one-quarter of said section 20, connecting with the old ditch near the west line of said northwest one-quarter. The new ditch had a capacity of ninety inches, as the court also found, and was used by Crawford on his lands from 1889 to 1891, inclusive, for the same purposes that the former ditch had been used by Beekman.

January 20, 1892, Crawford conveyed to plaintiff by deed of grant said northwest one-quarter of section 20, together with all water rights possessed or acquired by the grantor " either by use, purchase, or appropriation."

But in August, 1888, Brown, the defendant and appellant, a person qualified to acquire land under the

homestead laws, settled upon said northeast one-quarter of section 20, it being then public land of the United States, and in October of the same year he filed his homestead application therefor in the proper land-office, paying the fees of the receiver upon such entry and obtaining his receipt therefor; ever since his settlement he has resided on the land, cultivating and improving considerable portions of it, but has not made final proof nor received a patent for the same. When Crawford constructed the new ditch across defendant's homestead claim in 1889 defendant was temporarily absent therefrom and gave no consent to the change, but, on his return soon afterwards, he made no complaint or claim of damage, and permitted the use thereof by Crawford and his successor, the plaintiff, until the month of October, 1892, when he filled up such new ditch at a point on his homestead claim and stopped the further flow of the water and by force prevented plaintiff from repairing the ditch. In November, 1889, defendant constructed a ditch tapping Reyes creek, a tributary of said Cuyama creek, on land in section 16 belonging to the state of California, at or near the point of confluence of the two streams, about one-half mile above the head of the new ditch dug by Crawford in May of the same year, and thence leading to his, defendant's, homestead claim, said northeast one-quarter of section 20. By means of this ditch defendant diverted water from Reyes creek during the years 1890, 1891, and 1892, and used the same for irrigation and other purposes on his claim, not interfering with the flow of water to plaintiff's ditch during the first two of those years, but increasing the amount diverted during 1892 so as to materially lessen the quantity descending to plaintiff. Plaintiff then, in September, 1892, filled up defendant's ditch on said section 16 so that no water could pass into it from the creek. All the lands above mentioned lie in the same township and range, and are riparian to Cuyama creek.

Plaintiff commenced this action May 4, 1893, to

restrain defendant from interfering with the ditch and water rights acquired by plaintiff from Crawford, and for damages; defendant answered and also filed a cross-complaint setting up his claims to the water and to damages for plaintiff's invasion of his rights, and praying that plaintiff be restrained from interference with his use of the water, etc.

After trial the court rendered judgment determining that plaintiff has the paramount right to ninety inches of the water in Cuyama creek, for all useful and beneficial purposes, to be diverted through the ditch constructed by Crawford in 1889, and is the owner of such ditch, with the right to maintain it across the homestead claim of appellant, and enjoining defendant from disturbing plaintiff's enjoyment of such rights. Also that defendant is entitled to take ninety inches of water flowing at the head of his ditch in section 16 so long as the diversion of that quantity does not reduce the flow at the head of plaintiff's ditch below the same amount; that defendant has the right to maintain and use his said ditch to convey the water to which he is so entitled, and plaintiff is restrained from interference therewith. Plaintiff is awarded the entire flow of water at and above the head of the Crawford (new) ditch when the quantity falls below ninety inches; also judgment for nominal damages and his costs.

1. The first and most important question arising on this record relates to the right of Crawford, plaintiff's predecessor in interest, to enter upon the land claimed by and in the possession of defendant, and, in the exercise of the right to change the point of diversion, there construct a new aqueduct and lead the water through the same. For if he had not the right to effect the change in this manner, then the defendant was not in the wrong when he obstructed the flow of the water in the new ditch, and the judgment restraining him in that behalf, and establishing the right of plaintiff "to have, maintain, keep, and use" such new ditch for

diverting and conveying the water upon his, plaintiff's, land is erroneous.

The claim that Crawford, the former ditch-owner, was justified in shifting the point of diversion and the line of his ditch in the manner here disclosed is based mainly on the familiar provisions of the legislation of Congress, sections 2339 and 2340 of the United States Revised Statutes, concerning the rights of appropriators of water on the public lands and the saving of those rights in patents for such lands granted by the government; on section 1412 of the Civil Code of this state: "The person entitled to the use may change the place of diversion if others are not injured by such change;" and on certain cases in this court which will be noticed farther on.

We do not think that the right of the settler, under the federal homestead laws, on public land through which water flows is of the unsubstantial character which the contention of the respondent implies. Of course, if a valid appropriation of the water, whether on the particular tract or off it, has been made, the settler must take the land subject to that qualification of his right and of the title which he may ultimately acquire; but it should not be held that such qualification involves the indefinite extension of the right of the prior appropriator, unless the law is thus plainly written. It is of the highest importance to the *bona fide* settler on riparian lands to know the extent to which he must subordinate his claims to those of prior appropriators of the water; to know, in short, what easements and servitudes his land is subject to in favor of the previous appropriation. Has the prior appropriator license to enter upon the homestead claim of such a settler for the purpose of materially changing thereon the point of diversion and constructing new waterways through the land? Is such a license among the servitudes to which the land must be submitted?

We think not. "In no just sense can lands be said to be public lands after they have been entered at the land-office and a certificate of entry obtained. If public

lands before the entry, after it they are private property."
(*Witherspoon* v. *Duncan*, 4 Wall. 218.) The term "en-
try," as applied to appropriations of land within the
scope of the language just quoted, has been held to mean
"that act by which an individual acquires an inceptive
right to a portion of the unappropriated soil of the
country by filing his claim." (*Sturr* v. *Beck*, 133 U. S.
547–49, citing *Chotard* v. *Pope*, 12 Wheat. 588; *Hastings
etc. R. R. Co.* v. *Whitney*, 132 U. S. 357.) It appears
from the evidence in this case that on October 22, 1888,
the defendant made entry (within the meaning of the
authorities referred to) of the land in question in the
proper United States land-office, and that his entry re-
mains intact.

Crawford, a witness for plaintiff, testified: "When I
went there in 1888 Brown was on the northeast one-
quarter of section 20, and I think had a house. . . . . .
When I made the change in my ditch Mr. Brown was
in possession of his land. We had a fence between us,
so I ran with my new ditch through his fence."

Here was an entry, and here was an actual possession
of the land by defendant. In course of time, and on
compliance with the law relative to continuous residence
and cultivation, he will be entitled to a patent which will
invest him with the legal title. Now it cannot be that,
pending proceedings for the consummation of his inter-
est thus initiated, any other person may rightfully in-
vade his possession for the purpose of making an original
appropriation of water, and so possibly divesting the
land of its chief element of value, any more than for the
purpose of cutting off its timber or committing other
trespass. This proposition is substantially adjudged in
*Sturr* v. *Beck, supra,* where the supreme court of the
United States affirmed the doctrine that the plaintiff in
that case had "no right to enter upon the prior posses-
sion of the defendant under his homestead entry for the
purpose of appropriating any portion of the running
streams and creeks thereon." But what is the difference

in the legal wrong to the defendant between an entry
on his homestead with a view to appropriating for the
first time the water there flowing and an entry having
for its object the material shifting of the place of a pre-
vious diversion and the construction of new waterways
to make the diversion effectual?   Either purpose, if car-
ried out, must interrupt the quiet of his enjoyment and
deprive him of the use and control of some portion of
his property.

If it be said that by the ninth section of the act of
Congress of July 26, 1866, now embodied in section 2339
of the Revised Statutes of the United States, vested and
accrued rights to the use of water for beneficial pur-
poses, acquired by priority of possession thereof on the
public lands, are to be maintained and protected as
against homestead settlers on those lands, and that the
right of way for the construction of ditches for such
purposes is acknowledged so long as they are in any
sense "public lands," and before a patent has issued for
the same, and hence that defendant took up his land
subject to those reservations in favor of the prior appro-
priator, and the consequent right of the latter to change
his system of works at will, it may be replied: 1. That
the argument, if good for any thing, proves too much,
for, by the terms of section 2340 of the Revised Statutes
of the United States, a re-enactment of section 17 of
the act of July 9, 1870, upon this subject, the same ex-
ceptions and reservations are declared to qualify all
patents granted as well as all homesteads allowed; so
that the right of the prior appropriator of the water to
make such use of the land of the homestead claimant
would not cease with the issue of a patent to the latter,
but must continue indefinitely; a result which even the
cases relied on by respondent discountenances ( *Osgood*
v. *El Dorado Water etc. Co.*, 56 Cal. 571; *Farley* v. *Spring
Valley etc. Co.*, 58 Cal. 142); 2. It is only "vested and
accrued" rights to the use of water which are reserved
by the operation of the acts of Congress above referred
to from the interest that, without those provisions, would

vest in the homestead claimant; and the only vested and accrued right which Crawford had in the land at the time defendant made his homestead entry was the right to the continued flow of the water into his existing canal to the extent of his prior appropriation, including, of course, the right to maintain and improve such canal. True, he had the privilege of changing the point of diversion if he could do so without injury to others (Civ. Code, sec. 1412; *Ramelli* v. *Irish,* 96 Cal. 217); but such privilege is a different thing from the "vested and accrued" right to the use of the water; it is not a part of that right; and the condition upon which it can be exercised to any material extent becomes impossible when another person has made a lawful settlement on the land affected, and is proceeding in good faith under the homestead laws to perfect his title—impossible, that is, without the consent of such settler. This court, speaking through Mr. Justice Harrison, said recently: "That section [U. S. Rev. Stats., sec. 2339] does not confer the right to enter upon lands in the possession of another for the purpose of securing the water thereon, or of completing an attempted diversion of water, even though the person seeking so to enter had at some previous time manifested his intention to secure a water right thereon." (*Taylor* v. *Abbott,* 103 Cal. 424.) As little does it, in our opinion, confer the right to enter upon the possession of another for the purpose of materially changing the point of diversion of water already appropriated; certainly not for the purpose of constructing new aqueducts where none existed before.

By the terms of the proviso found in section 9 of said act of July, 1866, it is declared "That whenever, after the passage of this act, any person or persons shall, in the construction of any ditch or canal, injure or damage the possession of any settler on the public domain the party committing such injury or damage shall be liable to the party injured for such injury or damage"; and respondent claims that such provision authorized the construction of the new ditch by plaintiff's predecessor,

and that defendant's right is limited to compensation for the damage therein mentioned. This is not the proper construction of the proviso; it does not grant rights of way where none existed before, nor confer additional rights upon owners of ditches subsequently constructed. (*Jennison* v. *Kirk*, 98 U. S. 460; *Robertson* v. *Smith*, 1 Mont. 411.)

Does the fact that defendant has not made final proof of residence and cultivation, or obtained a patent, affect the case? In *Sturr* v. *Beck, supra*, the court quotes with approval this language of Attorney General MacVeagh in an opinion rendered by him in 1881: "Upon the entry the right in favor of the settler would seem to attach to the land, which is liable to be defeated only by failure on his part to comply with the requirements of the homestead law in regard to settlement and cultivation. This right amounts to an equitable interest in the land subject to the future performance by the settler of certain conditions (in the event of which he becomes invested with full and complete ownership); and, until forfeited by failure to perform the conditions, it must prevail not only against individuals, but against the government." And, in the course of the same decision, the court says further: "When, however, the government ceases to be the sole proprietor, the right of the riparian owner attaches and cannot be subsequently invaded. As . . . . no subsequent attempt to take the water only can override the prior appropriation of both land and water, it would seem reasonable that lawful riparian occupancy with intent to appropriate the land should have the same effect." We see no reason to hold that defendant's rights for the purposes of this case would have been enlarged by the issue of a patent to him. How could they have been augmented by that means, in view of the provision (U. S. Rev. Stats., sec. 2340) that such a patent must be subject to all "vested and accrued" water rights?

It must be remembered that the appropriator is not the owner of the "very body of the water" until it

passes into the appliances he has provided for its reception; before he is thus possessed of it he has a mere right to its continued flow, so that he may impound it; but the stream itself, flowing in its natural course, is a part of the land over which it flows. (*Parks etc. Co.* v. *Hoyt*, 57 Cal. 46; *Nevada County etc. Co.* v. *Kidd*, 37 Cal. 310, 311.) And it follows that after the land where the diversion is made has ceased, by reason of a lawful private appropriation thereof, to be public land and passed into private occupancy, the occupant of the land —in this case the homestead claimant—is the owner of the stream, in the same sense that he is the owner of the land, until it comes into the possession of the appropriator, and may justly repel any attempt to interfere with such ownership at any place except that where the diversion was effected when his rights to the land attached.

Nor is this necessarily a mere empty abstract right; the stream may add beauty to the landscape or afford valuable fishing privileges or furnish useful mechanical power, any of which elements of value would be liable to destruction if the prior appropriator may remove his point of diversion wheresoever he will after the inception of private title to the land in another person.

Our conclusion is supported by analogy also with the rule for many years enforced both in the federal courts and the courts of this state, that the right of property which the laws of Congress allow to be acquired on the public domain shall not be initiated by trespass and intrusion on the actual possession of a prior occupant. (*McBrown* v. *Morris*, 59 Cal. 64; *Goodwin* v. *McCabe*, 75 Cal. 588, and cases cited.) In *McBrown* v. *Morris* this court, quoting with approval the language of Mr. Justice Miller in *Atherton* v. *Fowler*, 96 U. S. 513, concerning the acquisition of pre-emption rights, said: "The right to make a settlement was to be exercised on unsettled land. . . . . It had reference to vacant land, to unimproved land; and it would have shocked the moral sense of the men who passed these laws if they

had supposed that they had extended an invitation to the pioneer population to acquire inchoate rights to the public lands by trespass, by violence, by robbery, by acts leading to homicides, and other crimes of less moral turpitude." We regard this just and forcible statement as equally cogent in the present case. The new ditch over defendant's claim, established as a legal right of plaintiff by the judgment appealed from, was constructed in virtue of an intrusion on defendant's possession during the latter's temporary absence from his home, and through artificial barriers erected by him; such acts, if tolerated at all, must certainly tend to the promotion of the evils prefigured in the language of the court just cited.

We have treated this subject somewhat at large because of its practical importance in the constantly expanding scheme of water development in this state, and because the result at which we have arrived seems to be at variance with parts of the argument, at least, on which rest some former decisions of this court (*Osgood* v. *El Dorado Water etc. Co.*, *supra; Farley* v. *Spring Valley etc. Co.*, *supra*), in so far as those cases seem to hold that, by reason of the legislation of Congress, the interest of the settler on government land with resĮect to appropriators of water on land claimed by him must be held to attach only at the time of the issuance of his patent, or, at the earliest, when he makes final proof and payment. The judgments announced in those cases may have been correct on their special facts; we do not pass on that question; but to the extent that they must find support in the proposition that the interest of a settler on the public lands under the pre-emption or homestead laws attaches as against the appropriators of water rights on his tract only as of the time of his final proof or obtaining a patent, they appear to be in conflict with the decision of the federal supreme court in *Sturr* v. *Beck*, *supra*, and the views of that court, as those of the tribunal of last resort in cases of this impression, must, of course, prevail. (See, also, *Faull* v. *Cooke*, 19 Or. 455;

20 Am. St. Rep. 836; Black's Pomeroy on Water Rights, secs. 40–42; Kinney on Irrigation, secs. 212–220.)

It follows that the defendant had the right to obstruct the flow of water across his claim in plaintiff's new ditch, and the court below erred in restraining him from so doing. And, since the plaintiff insisted on taking and did take the water by means and at a place unwarranted by his rights as a prior appropriator, it results further that the defendant, as entitled to the flow of the water after supplying the *lawful* requirements only of the plaintiff, had the right to use the same, and should recover the damages, if any, which he sustained by reason of the destruction of his dam and the filling of his ditch by plaintiff, and his consequent deprivation of the water.

2. But the plaintiff had the prior right to the use of the water to the extent of the appropriation made by his predecessors, Beekman and Crawford, through the old ditch, prior to the defendant's settlement, together with the right to maintain such ditch. Brown's claims as a homestead settler were subordinate to those interests and his land was subject to a servitude for the support of the same. (*De Necochea* v. *Curtis*, 80 Cal. 397; *Wells* v. *Mantes*, 99 Cal. 583.) It would be inflicting a severe penalty for the trespass committed by Crawford on the land of Brown and the attempt to shift the location of the ditch to hold that by that circumstance alone Crawford lost for himself and his successor, the plaintiff, all prior right to the flow of the water itself; he certainly did not intend to abandon his interest in the water. Whether he abandoned his property in the former ditch, and the right to lead water through the same, is a question which has not been argued here or apparently litigated below, and ought not to be now decided; but the parties should be allowed, if they so desire, to amend or supplement their pleadings, and to have determined in the trial court the issue just suggested and any other necessary to the adjustment of their relative rights under the law as stated in this opinion.

It seems to us doubtful whether the finding to the effect that the first ditch, after its repair by Beekman in 1885, was of a capacity to carry ninety inches of water, is sustained by the evidence in the record; but, as the question is not important to the present decision, we mention it merely that the parties may have the matter in mind if it should become of moment upon another trial.

We recommend that the judgment against the defendant and the order appealed from be reversed, and the cause remanded for a new trial and other proceedings not inconsistent with this opinion, both parties to the appeal having leave to amend their pleadings as they may be advised.

BELCHER, C., and SEARLS, C., concurred.

For the reasons given in the foregoing opinion the judgment against the defendant and the order appealed from are reversed, and the cause remanded for a new trial and other proceedings not inconsistent with such opinion; both parties having leave to amend their pleadings as they may be advised.

GAROUTTE, J., HARRISON, J., VAN FLEET, J.