[S. F. No. 3754.    In Bank.—February 8, 1907.]

# S. J. DUCKWORTH and FLORA McKINLAY DUCK-WORTH, Respondents, v. WATSONVILLE WATER AND LIGHT COMPANY et al., Appellants.

RIPARIAN RIGHTS—BEGINNING AND EXTENT.—A riparian right is limited to the riparian land, and begins only when the water reaches the riparian land. The riparian owner has the right to use the water as it passes his land for domestic purposes thereon, and to take out a reasonable portion thereof for the irrigation of his abutting land; and for the protection of this right, beginning when the water reaches his land, he has the right to insist that the water above his land shall not be polluted to his injury, nor diminished by other riparian owners above so as to deprive him of his just portion, and perhaps, as to other than riparian owners, the right to prevent any substantial diminution of the amount of the water which would naturally flow to his land.

ID.—LAND ON OUTLET OF LAKE—RIGHT LIMITED TO WET SEASON—CONVEYANCE.—A riparian owner has no title in the water of a stream before it reaches his land; and an owner of land not abutting on a lake, but only on an outlet thereof, through which water naturally flows from the lake to his land only in the wet season, has no riparian right in the lake or in pools standing above his land from which there is no natural flow to his land in the dry season; and he can convey no riparian right other than that which he owns upon the outlet to the lake, when water naturally flows therein. No one can sell or convey to another that which he does not own.

ID.—CONVEYANCE OF RIPARIAN RIGHTS — RESERVATION — SUBSEQUENT CONVEYANCE OF LAND TO PLAINTIFFS.—Where long prior to the conveyance to plaintiffs of lands riparian to a lake and its tributaries, their grantor had made conveyances to the grantors of defendant water company of all waters and water-rights pertaining to the land, reserving only sufficient water for domestic use and watering stock thereupon, the subsequent conveyance of the land to plaintiffs conveyed only such reserved water-right as an appurtenance thereto.

ID.—USE OF RESERVED RIGHT NOT ADVERSE.—The use of the reserved right of water sufficient for domestic use and for the watering of stock by plaintiffs and their grantor was not adverse to the rights of the defendant water company to the water-rights in the lake acquired under such grantor.

ID.—APPROPRIATION OF WATER—STREAM FLOWING INTO LAKE.—Where a stream flows into a lake a valid appropriation of water may be made either from the stream or from the lake in which the stream terminates, and which constitutes a part of it; and where a water company holds all the waters of the lake, except that which was

reserved, and with which it does not interfere, it may appropriate the water and take it to non-riparian lands to be used thereon for irrigation.

ID.—ESTOPPEL OF GRANTEES.—The plaintiffs as grantees from the common grantor, who had conveyed to defendants' grantors all waters of the lake other than the right reserved, are estopped by the deeds under which the water company claims from contending that the rights conveyed were only riparian, and that the appropriation by the water company is inconsistent therewith, no rights granted having been regained by adverse possession.

ID.—APPROPRIATION BY PLAINTIFF—CONTEST OF DEFENDANTS—APPROPRIATION.—A plaintiff is not estopped by such deed from making a subsequent appropriation of the water, and contesting the validity or effect of the appropriation made by the water company.

ID.—PLEADING—CROSS-COMPLAINT—INSUFFICIENT DENIAL — ADMISSION. —Where the water company, as defendant, did by way of cross-complaint allege that it ''is the owner and entitled to the exclusive use of all the waters of the lake,'' an answer thereto, denying that the water company is or has been ''the owner and entitled to the exclusive use of all the waters of the lake,'' is insufficient and constitutes an admission that the water company is entitled to substantially all of the water.

ID.—RIGHT OF APPROPRIATION NOT CONFINED TO PUBLIC LANDS.—The right to appropriate water under the provisions of the code is not confined to streams running over public lands of the United States; but it exists wherever the appropriator can find the water of a stream not appropriated and in which no other person has or claims superior rights and interests.

ID.—EFFECT OF APPROPRIATION.—The effect of an appropriation under the statute, when completed, is that the appropriator thereby acquires a right superior to that of any subsequent appropriator in the same stream; but he acquires thereby no right whatever as against rights existing in the water when the appropriation was begun, unless it has been continued adversely for a sufficient time to obtain a prescriptive title, and then only to the extent of the use. The amount claimed in the notice is no measure of the right.

ID.—RIGHTS OF PRIOR APPROPRIATOR AND RIPARIAN OWNER—DECREE QUIETING TITLE.—A prior appropriator who is also a riparian owner is entitled to a decree quieting his title against a subsequent appropriator whose rights are subordinate thereto.

ID.—EFFECT OF USE UPON RIPARIAN RIGHT.—A riparian right is neither gained by use nor lost by disuse; and the fact that the prior appropriator had not used the riparian right appurtenant to its land cannot affect the right of the owner thereof to have his title quieted thereto as against a subsequent appropriator, though such riparian right does not exist except for beneficial use upon the land to which it attaches.

ID.—RIGHTS OF SUBSEQUENT APPROPRIATOR TO SURPLUS—PROTECTION OF PRIOR APPROPRIATOR.—An appropriator is entitled only to the water actually taken and used, and a prior appropriator is not entitled to prevent a subsequent appropriation and use of any surplus water, if any exists. But the prior appropriator may insist upon a reasonably ample quantity to last through the entire season until. rains renew the supply, and may enjoin any depletion of the supply which will so lower the water surface as to substantially increase the cost of making the diversion which the prior appropriator is entitled to make.

ID.—SUFFICIENCY OF NOTICE.—A notice of appropriation stating that the water claimed is to be used for irrigation upon certain described land belonging to the appropriator's wife is not vitiated by an additional statement that it may be used for irrigation by other parties whose lands are not described. A statement that the water is to be conveyed to the place of use "by a six-inch pipe or by a pipe of other dimensions" is sufficient to authorize a diversion of the quantity that could be carried in a six-inch pipe, not exceeding the quantity claimed as the maximum.

ID. — ACKNOWLEDGMENT OF DEED — SUFFICIENCY OF CERTIFICATE AND SIGNATURE.—A certificate of acknowledgment of a deed made before a notary public, which recites his name and official character as a notary public in and for the county named, in the usual form, and is signed by him merely with the words "Notary Public" after his signature, sufficiently states the name of his office, within the requirement of section 1193 of the Civil Code, to entitle the deed to record.

APPEAL from a judgment of the Superior Court of Santa Cruz County. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

C. A. Shurtliff, and H. C. Wyckoff, for Appellants.

The owner of land has a right to the surface and everything permanently situated beneath or above it.     (Civ. Code, sec. 829.)     The term "land" comprehends "water," among other things, and has an indefinite extent upwards and downwards. (2 Black. Com. 18.)     Standing water is not the subject of appropriation.     (*Southern Pacific R. R. Co.* v. *Dufour,* 95 Cal. 617, 30 Pac. 783; *Hanson* v. *McCue,* 42 Cal. 309, 10 Am. Rep. 299; *Painter* v. *Pasadena L. and W. Co.,* 91 Cal. 74, 27 Pac. 539; *Gould* v. *Eaton,* 111 Cal. 644, 52 Am. St. Rep. 201, 44 Pac. 319; *Gouverneur* v. *National Ice Co.,* 57 Hun, 474, 11 N. Y. Supp. 87; Farnham on Waters, p. 1560; Gould on Waters,

sec. 75.)   The right to take water is a servitude which may be assigned by the owner of the land.   (Civ. Code, secs. 803-806, 1044; *Painter* v. *Pasadena L. and W. Co.,* 91 Cal. 74, 27 Pac. 539; *Fudickar* v. *East Riverside etc. Co.,* 109 Cal. 29, 41 Pac. 1024.)

H. A. Van C. Torchiana, and W. P. Netherton, for Respondents.

A stream of water flowing out into a broad sheet is a watercourse.   (*Rigney* v. *Tacoma Light etc. Co.,* 9 Wash. 576, 38 Pac. 147; Works on Irrigation, p. 27; Pomeroy on Water-Rights, secs. 65, 67.)

SHAW, J.—Plaintiffs are the owners of three hundred and twenty acres of land fronting on Pinto Lake, the plaintiff Flora being the owner of the fee, and the other plaintiff the owner of a leasehold interest.   They claim rights in the waters of the lake as riparian proprietors thereon, and the plaintiff S. J. Duckworth also claims a right by appropriation to take therefrom a quantity of water equal to a continuous flow of two hundred and fifty miners' inches under a four-inch pressure.   The lake contains an area of about seventy acres.   The defendant Watsonville Water and Light Company owns sixty-five acres of the bed and surface of the lake and all the lands surrounding it, except the land of plaintiffs and two other tracts of small extent, and claims the ownership of, and the right to take and use all the waters of, the lake.   The purpose of the action, as stated in the complaint, is to have the plaintiffs' alleged rights determined. The corporation defendant filed a cross-complaint alleging ownership of all the water of the lake, and asking that its right be also determined.   Judgment was given declaring that the plaintiffs have the right to take from the lake and use upon their land as much water as they could beneficially use thereon, not exceeding a continuous flow of two hundred and fifty miners' inches, and enjoining the defendants from interfering with the plaintiffs' right to such use, and that the defendant corporation take nothing by its cross-complaint. The defendants appealed from the judgment within sixty days after its rendition and present the evidence in the record by a bill of exceptions.

The plaintiffs derive their title to the land from Carmen Amesti de McKinlay, who on May 13, 1901, leased the land to S. J. Duckworth, and on August 6, 1901, conveyed it to the plaintiff Flora McKinlay Duckworth, subject to the lease. In 1885, while Carmen Amesti de McKinlay was the owner in fee of the land, she made conveyances to the defendants Smith and Montague, whereby she granted to them "all and singular the water and riparian and water-rights and privileges of every kind, character and description which belong, or in any manner pertain to" the three hundred and twenty acres of land, the same being particularly described therein, reserving, however, the right to water for domestic use and watering stock thereon. On January 21, 1897, Smith and Montague conveyed to the Watsonville Water and Light Company all the waters, rights, and privileges conveyed to them by Carmen Amesti de McKinlay as aforesaid. Smith and Montague thereupon, so far as appears, ceased to have any interest in the property in controversy. They joined in the answer and join also in the appeal. There are some indications in the evidence that their holding prior to 1897 was for the benefit of the water company. In any event, as they have no present interest, their position in the case need not be further discussed. It is claimed that the evidence does not sustain the findings. As to several of them we think this contention is well founded.

1. There was an outlet to Pinto Lake, through which water usually flowed from the lake during the rainy season of each year, but which was dry at all other times. One Grimmer owned a tract of land which abutted upon this outlet at a point some distance below the lake. On March 21, 1903, Grimmer conveyed to S. J. Duckworth "all riparian rights and other water-rights and water" which he possessed in this outlet as appurtenant or belonging to this tract of land. This conveyance was made after the beginning of the action, but before the filing of the cross-complaint, and in his answer to the cross-complaint Duckworth averred that by virtue thereof he was a riparian owner to the waters of the lake. The court found, in accordance with this answer, that the plaintiff S. J. Duckworth "is a riparian owner of the waters of said Pinto Lake, its tributaries and outlet," by virtue of this deed. Even if we consider the lake with its tributaries and outlet

as forming one continuous stream of water, as the lower
court found it to be, this finding is not technically true. Every
owner of land upon a stream is in some respects interested in
the entire stream. He has the right to use the water as it
passes his land for domestic purposes thereon, and to take out
a reasonable portion thereof for the irrigation of his abutting
land; and for the protection of this right, which begins only
when the water reaches his land, he has a certain right with
regard to all the waters of the stream above his land, the right
to insist that it shall not be polluted to his injury nor diminish-
ed from use by other riparian owners above, so as to deprive
him of his just portion, and perhaps, as to other than riparian
owners, the right to prevent any substantial diminution of
the amount of water which would naturally flow to his land.
If nothing more than this was meant by the finding in ques-
tion, we could not say that it was not supported by some evi-
dence, nor that it was not a correct general statement of the
right of Duckworth under the Grimmer deed. But the find-
ing is that Duckworth thereby became a "riparian owner"
of the waters of the lake, and it appears that under it he
claims some right, as against the defendant water company,
to take water from the lake for use, not on the Grimmer land,
but on the Duckworth land, which abuts on the lake far from
the outlet, and that not only during the rainy season, or at
such times as there is water flowing to the Grimmer land, but
during all seasons and when the outlet is entirely dry. The
court below seems to have intended this finding to declare some
such right. This claim is contrary to the doctrine of riparian
rights and to the general principles of law as well. Neither
a riparian proprietor nor an appropriator has title or owner-
ship in the water of the stream before it reaches his land, or
point of diversion, respectively. This has been expressly de-
cided with respect to appropriators. (*Parks M. Co.* v. *Hoyt,*
57 Cal. 46; *Riverside W. Co.* v. *Gage,* 89 Cal. 418, [26 Pac.
889] ; *McGuire* v. *Brown,* 106 Cal. 670, [39 Pac. 1060].) The
same rule applies to the riparian owner. As a riparian owner,
Grimmer had no title to the water, except as it passed in front
of his land and constituted the stream. The right or title to the
stream as it passed was a part and parcel of his land, a part of
the realty. (See cases last cited.) Being a part of his realty
on his land, it was also part of the realty of other riparian

owners at the points where it passed over their lands. Hence, the title of each to the water exists only during such passage, and the right of each in the water during its course above consists only of the right to use such means as are necessary to preserve it until it reaches his land. Grimmer had the right to use a reasonable portion of the water running in the outlet by his land for the irrigation of his land riparian thereto, and to take the whole of it, if necessary, for domestic purposes. This right exists because the stream runs by the land, and thus gives the natural advantage resulting from the relative situation. When the stream ceased and the channel became dry, he for the time being ceased to be a riparian owner, so far as a present use of the water was concerned. His land did not at those times border upon any stream. It did not then possess any natural right to the use of the water standing in pools or lakes at points above his land. During such dry periods he could obtain the use of water from such pools or lakes only by convention with the owners of the lands abutting upon them. He would not have it by virtue of any right pertaining to his own land. Furthermore, his riparian right is limited to his riparian land. It gave no right to use any of the water of the stream for any purpose upon land not riparian, nor upon any riparian land other than his own. No one can sell or convey to another that which he does not himself own. Grimmer could not by a transfer of his riparian rights sell to the plaintiff, as against third persons having interests in the water, the right to use the water upon any land, riparian or non-riparian, except his own, to which it originally attached. His deed operated to prevent him from complaining of a diversion, but it did not affect other parties. It does not appear that Grimmer had any water-rights, except his right as riparian owner to the use of the water of the outlet. It follows, therefore, that Duckworth did not obtain anything by the Grimmer deed except the right to use the water of the outlet on the Grimmer land, when any water was flowing therein, and an estoppel against Grimmer to prevent complaint by him against any use of such water which Duckworth might make to the injury of the Grimmer riparian right as above defined. It did not in any respect add to his rights to take water from the lake for use on the Duckworth land, as against the de-

fendants, or as against any one except Grimmer and his successors in interest.

2. The findings further state that the water company has never exercised or used any of the water-rights derived from the deeds from Carmen Amesti de McKinlay to Smith and Montague. This is true in the literal sense that it has not used any water upon the land to which these rights prior to those deeds attached. But it appears from the evidence that the water company was pumping water from the lake during the eight years extending from December, 1894, to December, 1902. The amount is not shown, but it was enough, during part of the time at least, according to the testimony of William A. White, its superintendent, to furnish water to several strawberry-growers for irrigation of their plants, and so much that if the plaintiffs took the two hundred and fifty inches they claim the two diversions would not leave much water in the lake at the end of the dry season. This evidence is not as definite as it should have been, but there being no evidence to the contrary it established the fact that the company had taken a substantial quantity of water from the lake during the time specified. Such taking would have been contrary to the riparian rights attached to the Duckworth land, if they had remained unsevered therefrom. By reason of its purchase of these riparian rights the company possessed the right, so far as that land and its owners were concerned, to use the whole or any part of the waters of the lake except such as were necessary for domestic use and for the watering of stock thereon. The pumping of the water was done in the exercise of this right, and it was a right obtained by virtue of the McKinlay deeds. This finding is therefore contrary to the evidence.

3. There is a finding to the effect that, after the execution of the deeds by Carmen Amesti de McKinlay to Smith and Montague, in 1885, she continued in possession of the water and water-rights thereby granted to them, and that she and the plaintiffs, as her successors, did not relinquish possession thereof to the grantors, but have ever since then remained in possession thereof, and that they had been in the open, notorious, hostile, and adverse possession thereof for more than five years immediately before the commencement of this action. This finding has no support in the evidence. They did

indeed remain in possession of the land and continued to exercise all ordinary acts of ownership over it, including the use of the water of the lake for the watering of stock. This latter use of the water, however, was reserved in the deed, and hence it was not one of the rights granted. Even if it had been granted, the adverse use for the watering of stock alone could gain a right only to the extent of the use, and it would not confer any right to the additional use of water for the irrigation of land. There is no evidence that Mrs. McKinlay or either of the plaintiffs ever made any use of the water other than for the watering of stock, or claimed the right to do so as against the defendants, until November, 1902, a few months before this action was begun. The finding seems to have been based on the fact that the defendants never entered upon the land of the plaintiffs for the purpose of exercising or asserting the right to use the waters of the lake which they obtained under the McKinlay deeds. But it was not requisite to the exercise of the rights granted by the deeds that they should enter upon the land, unless it became necessary to do so in order to get the water from the lake. The deed was evidently procured to protect the grantees from interference in their proposed diversion of water from the lake. They could get the water from any other point on the lake as well as from the limits of the McKinlay land, and it appears that they took it from the lower end of the lake. This was a taking from the McKinlay land as well as from all the other land on the borders of the lake. The force of gravity would accomplish that. The use which was made of the land by the plaintiffs and McKinlay was not antagonistic to the right which the defendants had to the water under the grant. It is not true, therefore, that the grantor and her predecessors continued or remained in possession of the rights of the grantee, nor that said rights were not relinquished to the grantees, nor that the possession of the plaintiffs and their predecessor extended to the water-rights granted, or was hostile and adverse to the grantee, or open and notorious with respect thereto. According to the evidence, their actual use of the water, if any, did not begin under their adverse claim until the day of the trial in the lower court.

4. There is some evidence that Pinto Lake, with its tributaries and outlet, during the rainy season, constituted a run-

ning stream of water. It is clear that during the dry seasons there was no water flowing out of the lake, but there is evidence that during that period there was a slight flow from a tributary into the lake. We cannot agree with the appellant in his contention that the finding that the lake, or its tributaries, constituted a running stream is not sustained by the evidence. We think the better doctrine in respect to the character of a stream from which the statute provides for appropriations is that it is not necessary that the stream should continue to flow to the sea or to a junction with some other stream. It is sufficient if there is a flowing stream; and the fact that it ends either in a swamp, in a sandy wash in which the water disappears, or in a lake in which it is accumulated upon the surface of the ground, will not defeat the right to make the statutory appropriation therefrom, and we can see no reason why the appropriation in such a case may not be made from the lake in which the stream terminates, and which therefore constitutes a part of it, as well as from any other part of the watercourse.

5. The only use which the water company makes of the water is to take it to non-riparian lands, to be used thereon for irrigation. Respondents claim that the only right of the water company to the water shown in the case consists of the riparian rights pertaining to the narrow strip of land belonging to the water company surrounding the greater part of the lake, and the riparian rights under the McKinlay deeds, and that the use made of it is not in the exercise of either of these rights, but is inconsistent with each of them. In regard to this claim it is to be observed that so far as the use made of the water by the water company may affect the rights claimed by the Duckworths as riparian owners of the McKinlay land, they have no ground of complaint, being estopped by the McKinlay deeds and not having regained the rights by adverse possession. The estoppel does not extend to the water necessary for domestic use and for stock, but their right to that extent is not in dispute, nor have they been deprived of it by the water company. But S. J. Duckworth claims a right to a part of the water by appropriation, and with respect to the right thus claimed he has a *status* which entitles him to challenge the right of the water company. His privity with the McKinlay deed does not estop him from making an appro-

CL Cal.—34

priation of any water in the lake that may be subject to appropriation, nor from demanding that the water company shall not make a greater use of the water than it is authorized to do by the rights which it is shown to have, if such use interferes with an appropriative right possessed by him. But the claim that the water company has not established any other right is not maintainable. Its cross-complaint alleges that it is, and for a long time has been, "the owner and entitled to the exclusive use of all the waters" of Pinto Lake. The plaintiffs in their answer thereto deny that the water company is, or has been, "the owner and entitled to the exclusive use of all the waters" of the lake. That is not a good traverse of the allegation. It is an admission that the water company is entitled to substantially all of the water. (*Fitch* v. *Bunch,* 30 Cal. 208; *Blood* v. *Light,* 31 Cal. 115; *Fish* v. *Reddington,* 31 Cal. 185; *Reed* v. *Calderwood,* 32 Cal. 109; *Doll* v. *Good,* 38 Cal. 287.) This allegation of the cross-complaint, therefore, stands as an admitted fact of the case, except so far as it is inconsistent with the affirmative allegations of the answer thereto and of the original complaint. The effect, for the purposes of the trial, was to establish the fact that the water company owns, and has the exclusive right to use for any purpose and at any place, all of the water of the lake, excepting such portion thereof, or right thereto, as is alleged and was proven to belong to the plaintiffs or either of them. Inasmuch as the evidence did not show, and the court did not find, that the alleged claims of plaintiffs included all the waters of the lake, the judgment that the defendants take nothing is contrary to the evidence and to this admission of the pleadings. The existing rights of other riparian owners not parties to this suit are not material to this case.

6. The right to appropriate water under the provisions of the Civil Code is not confined to streams running over public lands of the United States. It exists wherever the appropriator can find water of a stream which has not been appropriated and in which no other person has or claims superior rights and interests. And the right cannot be disputed except by one who has or claims a superior right or interest, and by him only so far as there is a conflict. It cannot be vicariously contested by another on behalf of the owner of the better right. The effect of an appropriation under the statute, when com-

pleted, is that the appropriator thereby acquires a right superior to that of any subsequent appropriator on the same stream. But he acquires thereby no right whatever as against rights existing in the water at the time his appropriation was begun. An appropriation does not of itself deprive any private person of his rights; it merely vests in the appropriator such rights as have not previously become vested in private ownership, either by virtue of some riparian right or because of prior statutory or common-law appropriation and use. It affects and divests the riparian rights otherwise attaching to public lands of the United States, solely because the act of Congress declares that grants of public lands shall be made subject to all water-rights that may have previously accrued to any person other than the grantee. An appropriation of water and use thereunder does not become effective to divest private rights in the stream, unless it has been continued adversely thereto for the period of five years under such circumstances as to gain a title by prescription, and then only to the extent of the use. The amount claimed in the notice is no measure of the right.

It follows that the attempted appropriation by S. J. Duckworth of a part of the water of the lake did not divest or affect the existing rights of the water company, either as riparian owners or by virtue of a prior appropriation or use. And so far as his claim was adverse to, and in conflict with, the prior rights and interests of the water company, it was entitled to a decree quieting its title against him and enjoining him from asserting such adverse title. This applies to the riparian right which attached to its strip of land partially surrounding the lake as well as to any other prior right which it possessed to the water. The fact that the company had not used the water on this narrow strip did not affect the riparian right. A riparian right is neither gained by use nor lost by disuse. And for the protection of these riparian rights the water company is entitled to a judgment declaring Duckworth's appropriation subject to the riparian rights pertaining to its lands and subject to all other prior rights of the water company, so that the continued use of the water by Duckworth shall not be adverse and shall not ripen into an easement which, in effect, would divest the rights of the water company. (*Moore* v. *Clear Lake W. Co.*, 68 Cal. 146, [8 Pac. 816];

*Stanford* v. *Felt*, 71 Cal. 249, [16 Pac. 900]; *Heilbron* v.
*Fowler S. C. Co.*, 75 Cal. 426, [7 Am. St. Rep. 183, 17 Pac.
535]; *Conklin* v. *Pacific I. Co.*, 87 Cal. 296, [25 Pac. 399];
*Walker* v. *Emerson*, 89 Cal. 456, [26 Pac. 968]; *Spargur* v.
*Heard*, 90 Cal. 221, [27 Pac. 198]; *Anaheim U. W. Co.* v.
*Fuller, ante,* p. 327, [88 Pac. 978], decided 1907.)

7. We have said that, because of the McKinlay deeds, and so
far as the claim of plaintiffs as riparian owners is concerned,
the water company can use the water for any purpose, at any
place, and in any quantity which leaves plaintiffs enough for
stock and domestic purposes. But the mere fact that the
company is a riparian owner on the lake gives it no right
whatever to the water of the lake, except for actual beneficial
use upon the land to which the riparian rights attach. The
evidence does not show that it is using the water on that land
at all. It is carrying the water to other lands and places
for use and sale. The admission of the pleadings above re-
ferred to relieves it of the necessity of establishing its right
to do this, except as it may be affected by evidence in support
of the specific rights alleged by the plaintiffs. But the right
it actually exercises is not a right derived from the fact of
its riparian ownership of the greater part of the lake shore
and bed.

8. The claim of the respondents that the grant by Mrs.
McKinlay of the rights pertaining to the land described in the
deeds extended only to the water then standing in the lake,
and that as soon as that water was exhausted by use, run-off,
or evaporation, the rights ceased to exist, is utterly baseless
and needs no discussion further than to deny it.

9. In its conclusions of law the court declared that the
defendants are estopped from claiming any rights under the
McKinlay deeds. We find nothing in the evidence justifying
this conclusion. The plaintiffs did not make an adverse claim
until November, 1902, and the water company, about the same
time, served on them written notice of its claim to the water
under the said deed. This may not have been necessary, but
it undoubtedly prevented any estoppel from arising in their
favor by reason of any subsequent expenditure of money by
them in the diversion of water in pursuance of their adverse
claim, granting that such expenditure would otherwise have
created an estoppel.

10. We have said that the water company is entitled to a judgment protecting its riparian right, although it has not used, and does not immediately propose to use, the water on its riparian land. This rule does not apply to any right which it has acquired by appropriation or use upon other lands, and this appears to be the source of the right which it has been exercising. Such right depends upon use and ceases with disuse. (Civ. Code, sec. 1411.) It extends only to the water actually taken and used. The consequence is that, so far as the protection of this right and the water necessary to supply this use are concerned, the water company is not entitled to prevent an appropriation or use by others of the surplus of the waters of the lake, if there is any. So long as there is enough to supply it with the quantity of water which it has been so using, it has, in the protection of this right, no concern with the disposition of the remainder. It has the right, of course, to insist upon a reasonably ample quantity to last through the entire season, until rains renew the supply, and also to enjoin a depletion of the lake which will lower the water surface so as to substantially increase the cost of making the diversion it is entitled to make.

11. It may be that upon another trial the sufficiency of the notice of appropriation posted by S. J. Duckworth may not be important. But as this cannot be decided here, it is necessary to notice the objections urged against it. The notice states that the water claimed therein is to be used for irrigation upon the land owned by Mrs. Duckworth, describing it. This is a sufficient statement of the purpose for which the water was claimed and the place of intended use, and it is not vitiated by the additional statement in the notice that it was also to be used for irrigation by other parties to whom Duckworth might furnish it upon other land, which was not described. It was a good notice for the appropriation of water for use on the place designated, at all events. It states that the water is to be conveyed to the place of use ''by a six-inch pipe, or by a pipe of other dimensions.'' This we consider sufficient to authorize a diversion of the quantity that could be carried in a six-inch pipe, and not exceeding the two hundred and fifty miners' inches claimed as the maximum. Whether or not it would justify a diversion within the amount limited if carried in a pipe more than six inches in diameter,

is a question not presented, inasmuch as it does not appear that such pipe was proposed to be used.

12. It is claimed by the respondents that they acquired their title from Mrs. McKinlay to the land in question by purchase for a valuable consideration, and without actual notice of the deeds to Smith and Montague, and that the record of those deeds is ineffectual to constitute constructive notice to them, because the acknowledgment of each deed is defective. The acknowledgments were made before a notary public. The certificates recite his name and official character in the usual form. They are signed by him with the addition of the words "Notary Public" after his signature. The code requires that the officer certifying to an acknowledgment must affix thereto his signature, followed by the name of his office. (Civ. Code, sec. 1193.) The objection is that the words "Notary Public" are not a sufficient statement of the name of the office. The certificates in question begin thus: "State of California, Monterey County, ss.," and each recites that "before me, John Ruurds, notary public in and for said Monterey County, personally appeared," etc. In view of this statement we think the name of the office is sufficiently stated after the signature. There is nothing in *Emeric* v. *Alvarado*, 90 Cal. 479, [27 Pac. 356], that is in conflict with this conclusion. In that case the body of the certificate stated that the officer was a notary public of the city and county of San Francisco, while the name of the office after the signature was given as "Notary Public, Contra Costa County." The officer was in fact a notary public of Contra Costa County and the acknowledgment was taken in that county, though the contrary was stated in the certificate. It was held that the certificate was invalid because it did not, in the body of it, truly recite the "name and quality of the officer" or the venue, as the law required, and that the words "Notary Public, Contra Costa County" following the signature, were not sufficient to make it good. The two statements were inconsistent, and the certificate afforded no means of ascertaining which was correct. Here there is no inconsistency, and the statement after the signature, construed according to the ordinary usage of the language, and in connection with the recital, means that the person signing was a notary public of Monterey County. This is the proper construction, and therefore it does correctly state the name of the office as the code prescribed.

In conclusion, we deem it proper to say that, upon another trial, if the court shall decide that either of the parties possesses rights to the water, acquired by appropriation under the statute or by diversion and use, it will be necessary to ascertain and declare the amount of water covered by the right owned by each respectively.

It is not necessary to mention the other points discussed in the briefs.

The judgment is reversed and a new trial ordered.

Angellotti, J., Sloss, J., McFarland, J., Henshaw, J., and Lorigan, J., concurred.

Rehearing denied.