[S. F. No. 6434.   In Bank.—June 18, 1915.]

## S. J. DUCKWORTH, and S. J. DUCKWORTH Substituted for Flora McKinlay Duckworth, Respondents, v. WATSONVILLE WATER AND LIGHT COMPANY ( a Corporation), Appellant, and FRANCIS SMITH, and W. W. MONTAGUE, Defendants.

WATER-RIGHTS—CONVEYANCES OF SAME—RIPARIAN RIGHTS—APPROPRIATION—ESTOPPEL.—Where the owner of a tract of land, part of which is riparian and part nonriparian to a lake, granted "all and singular the water and riparian rights and water-rights and privileges of every kind and description which belong or in any manner pertain to" said tract and later conveyed the land to another party, who thereupon made an appropriation of water from the lake to irrigate a portion of such land, the successor in interest of the grantee of such water-rights is entitled to the waters of the lake as against the subsequent grantee of the land claiming riparian rights, and such grantee is also estopped from asserting a right to such water based upon an appropriation for use upon the land.

ID.—APPROPRIATION—EFFECT ON PRIOR RIGHT—EFFECT ON SUBSEQUENT APPROPRIATION.—An appropriation of water under the code divests no existing prior right, but merely gives a preference over a subsequent appropriator or diverter and fixes the date of posting the notice of appropriation as the inception of the claim under it.

ID.—EFFECT AS AGAINST THE UNITED STATES—FOUNDATION OF RIGHT.—An appropriation of water made upon lands of the United States gives the appropriator a right to the water as against the United States, but that right exists solely because by the act of Congress of July 16, 1866 (14 U. S. Stats. 253), the United States declared that such appropriation, if recognized by local laws, should confer upon the diverter the riparian rights pertaining to the lands of the United States abutting on the stream. Such appropriation gives no right as against other landowners, and the right exists, not upon the theory that the water is held by the United States for public use, but because the United States, as proprietor of the land, by that act granted a part of its property to such diverter.

ID.—EFFECT OF APPROPRIATION UNDER LAWS OF CALIFORNIA—FOUNDATION OF RIGHT.—An appropriator under the code thereby obtains a right as against the riparian rights of the state pertaining to land owned by it along the stream, but solely because the state in section 1410 of the Civil Code has so declared, and this declaration binds the state as to its proprietary lands, but such appropriation does not affect other land or water-rights pertaining thereto.

Id.—Extent of Interest of California.—Except as to riparian rights pertaining to lands owned by the state bordering on non-navigable streams the state has no right to the waters thereof and therefore cannot dispose of them.

Id.—Appropriation—Effect When Adjoining Lands in Private Ownership.—Where, at the time of appropriation of the waters of a lake, the lands bordering on the lake and its tributaries are all in private ownership no right is acquired by such appropriation.

Id.—Conveyance of Water-rights Pertaining to Land—Scope of Operation.—The conveyance of all water-rights and privileges belonging or pertaining to a tract of land not specifically referring to a lake on which the land abuts, includes water percolating in the land regardless of its source or of whether it had entered the lake, as well as water which had already entered the lake.

Id.—Law of the Case—Different Facts on New Trial.—The doctrine of the law of the case does not apply where the facts appearing upon a new trial are materially different from those on which the decision constituting the law of the case was based.

Id.—Reservation in Conveyance—Absence of Covenant to Construct Conduit—Failure of Consideration.—Where in a deed executed by grantor and grantees conveying all water-rights belonging to a tract of land owned by the grantor, the right to water for domestic purposes and for watering stock is reserved with a right to the grantor to connect with the flume or pipe of grantees for the purpose of using such water, but the deed contains no covenant that the grantees shall construct such pipe or flume, the failure to construct such pipe or flume does not constitute a breach of covenant and is not a failure of consideration.

Deeds—Failure of Consideration—Executed Conveyance.—Neither a failure of consideration nor a breach of covenant which does not amount to a condition is sufficient to avoid an executed conveyance of property rights.

APPEAL from a judgment of the Superior Court of Santa Cruz County. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

H. C. Wyckoff, and Charles A. Shurtleff, for Appellant.

H. A. van C. Torchiana, W. P. Netherton, and Stratton, Kaufman & Torchiana, for Respondents.

SHAW, J.—This is the third appeal in this cause. Upon the first appeal the judgment below in favor of the plaintiff was reversed. (*Duckworth* v. *Watsonville etc. Co.*, 150 Cal.

520, [89 Pac. 338].) Upon the second appeal from a similar judgment at the second trial, the judgment was again reversed. (*Duckworth* v. *Watsonville etc. Co.*, 158 Cal. 206, [110 Pac. 927].) The plaintiff again recovered judgment in the court below and the defendant again appeals. S. J. Duckworth is now the sole plaintiff, he having succeeded to the interests of Flora McKinlay Duckworth, originally a co-plaintiff with him.

The facts of the case are given in detail in the previous opinions. A brief statement will be sufficient to present the points arising upon the present appeal.

Both plaintiff and defendant claim rights to the waters of Pinto Lake. The plaintiff claims under an alleged appropriation made in 1903, and a beneficial use of the water diverted in pursuance thereof. The defendant claims the right to take water to the extent of forty miner's inches, under an appropriation and beneficial use for many years prior to the plaintiff's claim. It also claims as an owner of land bordering on the lake around the greater part of its shores, and particularly as successor to the grantees of Carmen Amesti de McKinlay, under deeds conveying the water-rights and privileges pertaining and belonging to the land now claimed by Duckworth. The plaintiff has succeeded to the estate and interest of Carmen Amesti de McKinlay, subject to the rights of the defendant under said deeds.

The judgment which is the subject of the present appeal declares: 1. That the defendant is the owner of the "riparian rights in said Pinto Lake" attached to that part of the land described in the McKinlay deeds which is riparian to the lake; 2. That the defendant is a senior appropriator of the water of the lake, to the extent of forty miner's inches, which right takes precedence of the rights adjudged to Duckworth; 3. That the defendant owns a narrow strip of land partly surrounding Pinto Lake, and riparian thereto, and that its rights as such riparian owner be quieted and confirmed; 4. That defendant also owns five and a half acres of land "riparian to the outlet of Pinto Lake," which riparian rights are also quieted and confirmed; and, 5. That plaintiff has the right, as a junior appropriator, to divert one hundred and forty-two miner's inches of the waters of said lake, subject to the rights of the defendant stated in the first four declarations aforesaid.

The deeds executed by Mrs. McKinlay to the defendant's predecessors, Smith and Montague, described a tract of land containing three hundred and twenty acres, being the same land now possessed by Duckworth, and conveyed to said grantees ''all and singular the water and riparian rights and water-rights and privileges of every kind and description which belong or in any manner pertain to'' the said tract of land, reserving water for domestic use and for watering stock. The boundaries of this tract include a small part of the lake itself and the tract borders on the lake for a considerable distance and also upon a stream which feeds it. Duckworth, having succeeded to the title remaining in Mrs. McKinlay after the execution of the aforesaid deeds, and having notice of said deeds, now claims the right to divert one hundred and forty-two miner's inches of water from the lake and to use the same for the irrigation of parts of said land described in said deeds. This claim is the cause of the controversy.

Upon the first appeal the court held, with respect to this claim, that ''by reason of its purchase of these riparian rights the company possessed the right, so far as that land and its owners were concerned, to use the whole or any part of the waters of the lake'' except such as was necessary for domestic use and stock thereon. (150 Cal. 527, [89 Pac. 338].) The decision (p. 531) also established the proposition that the appropriation of Duckworth did not deprive the defendant of any rights to the waters of the lake which it possessed at the time of such appropriation; that neither an appropriation under the Civil Code, nor a hostile diversion without compliance with the code, would have any effect upon the rights of other persons existing at the time such appropriation or diversion began, or operate to gain any right for such appropriator or diverter; that Duckworth could not acquire any right to use any of the water of the lake on any part of the McKinlay land, against the defendant's rights under the McKinlay deeds, except by contract with the defendants, or by an open, continuous, uninterrupted, adverse use for five years before the action was begun. Upon the first appeal there was no finding that any part of the McKinlay land lay outside of the watershed of Pinto Lake and its tributaries, or that any part of it was not riparian to the lake. It was there assumed to be all riparian thereto. Consequently, the only rights referred to in that opinion as rights conveyed by

the McKinlay deeds were the riparian rights of the land described. Nothing was said with regard to the other "water-rights and privileges" conveyed by said deeds.

Upon the second trial the court made a finding that the water theretofore diverted by Duckworth, under his appropriation, had been applied by him to the irrigation of a portion of the McKinlay land, "but that said portion so irrigated is all nonriparian to Pinto Lake." Upon this finding the plaintiff sought to evade the effect of the first decision. It was argued that the deeds conveyed only the riparian rights pertaining to the land and did not divest Mrs. McKinlay or her successor, as owner of the land, of the right to take water from the lake and use it upon the nonriparian portion of the land. The court thereupon, on the second appeal, again considered the effect of the McKinlay deeds, especially with respect to the question whether or not they worked an estoppel against rights other than riparian rights. The court there said (158 Cal. 213, [110 Pac. 930]) : "The instrument conveys not only riparian rights, but all water and water-rights and privileges of every kind, character and description which belong, or in any manner pertain to said land. The right, or one of the rights, now asserted by Duckworth is to apply the waters to the irrigation of the same land. This is a right which has been transferred by his predecessor in interest to the defendant, and he is, by virtue of her deed, estopped from asserting it in antagonism to her grantees." . . . "If Duckworth, in applying waters for the benefit of his lands were to be given priority over the use of the same waters by the Watsonville Water and Light Company, his appropriation would have the effect of taking away from said company a part of the very right which had been transferred by plaintiff's predecessor. . . . That grant was . . . effective as an estoppel on the grantor and her successors, preventing them from objecting to any use by the water company of water which might, in the absence of the deed, have been applied for the benefit of the McKinlay land." And thereupon the court declared that Duckworth could not take water from the lake to be used on any part of said land. (158 Cal. 214, [110 Pac. 927].)

Counsel for plaintiff now claim that the last decision did not cover the exact point presented by the language of the deeds. Their argument is that the deeds purport to convey

and do convey only those water-rights and privileges "which belong or in any manner pertain to" the McKinlay land, that the right given by the Civil Code to appropriate the water of a stream for beneficial use, is not a right belonging or pertaining to land, but is a right which may be exercised by any citizen, even if he owns or possesses no land and expects to acquire none, and, therefore, that the deeds did not convey such right of appropriation, nor operate as an estoppel to prevent the grantor or her successor from appropriating water from the lake and using it on the land described, provided, only, the use on the land was not such as would pertain or belong to the land itself without resort to the code as authority for the taking and use. The court found that the lake, with its tributaries and outlet, constituted a flowing stream.

It is apparent, upon a consideration of the circumstances attending the execution of these deeds, that this construction of the deeds would completely frustrate the object sought to be attained thereby and defeat the chief inducement which led the grantees to take them. The deeds show that the grantees proposed to construct conduits whereby to divert water from the lake. It appears from the evidence that they desired to engage in the business of diverting this water and supplying it to the inhabitants of Watsonville and vicinity, as for a public use. They immediately proceeded to construct the diverting works and establish the proposed water system and they and their successors have ever since continued to take water from the lake and devote it to the purpose above stated. The deeds were obtained in order to prevent any interference with the enterprises by a hostile use of the water on the McKinlay land. It appears, further, that only some twenty acres of the McKinlay land lies on the slope toward the lake and its tributary, and that this part is steep and irrigation thereof is impracticable, while three hundred acres thereof is on a slope from which water will not run into the lake and is suitable for cultivation and irrigation. Duckworth pumps the water of the lake over the intervening ridge and uses it to irrigate a part of this three hundred acres. For the purposes of this case it may be conceded that this part of the land is not riparian to the lake and that the use of the water of the lake to irrigate that portion of the land would not be an exercise of riparian rights in the lake. It is manifest that no use that could be made of

the water on the land sloping toward the lake would interfere to any great extent with the defendant's supply from the lake. It must have been the object of these conveyances to include the right to the very use of the water now made by Duckworth, else they could have been of no substantial benefit to the grantees, or detriment to the grantor. Under these circumstances, it would be a strained construction, one which would defeat the clear intent of the parties, to hold that the water-rights and privileges belonging or pertaining to the land and conveyed by the deeds do not include the privilege, available to the owner because of the right of access, to take water from the lake and apply it to irrigate the only part of the land suitable for irrigation, though lying beyond the immediate slope of the land toward the lake. We now hold, and in the last opinion were intending to declare, that the deeds were intended to and did convey that right or privilege and that it is now vested in the defendant and not in Duckworth. To obtain the right to use the water for irrigation he must deal with the defendant; he did not obtain it by acquiring title to the land, and, having acquired that title, he cannot for its benefit exercise the supposed right given by the code.

The argument on this point is partly, if not entirely, based on the theory that an appropriation of water, under the code, constitutes a grant by the state of a right to take the water appropriated, a grant which confers upon the appropriator a title or right to the water superior to private rights, riparian or otherwise, existing at the time of the appropriation. This theory seems to persist in the minds of members of the bar. It finds no support in the decisions of this court. It has long been settled in this state that an appropriation under the code divests no existing private right, that its effect is merely to give a preference over a subsequent appropriator or diverter who takes under no other right or title, and to fix the date of the posting of the notice as the inception of the claim under it. (*De Necochea* v. *Curtis,* 80 Cal. 402, 405, [20 Pac. 563, 22 Pac. 198]; *Wells* v. *Mantes,* 99 Cal. 584, [34 Pac. 324]; *Alta Land Co.* v. *Hancock,* 85 Cal. 223, [20 Am. St. Rep. 217, 24 Pac. 645]; *Cave* v. *Tyler,* 133 Cal. 566, [65 Pac. 1089]; *Santa Cruz* v. *Enright,* 95 Cal. 113, [30 Pac. 197]; *Frederick* v. *Dickey,* 91 Cal. 358, [27 Pac. 742]; *Coonradt* v. *Hill,* 79 Cal. 593, [21 Pac. 1099]; *Watterson* v. *Saldunbehere,* 101 Cal.

112, [35 Pac. 432] ; *Lux* v. *Haggin*, 69 Cal. 390, [4 Pac. 919, 10 Pac. 674] ; *Palmer* v. *Railroad Commission*, 167 Cal. 168, [138 Pac. 997].)

These decisions show that while an appropriation or diversion made upon lands of the United States gives the appropriator or diverter a right to the water as against the United States it does so solely because, by the act of Congress of July 16, 1866 (14 U. S. Stats. 253), the United States declared that such diversion, if recognized by local laws, should be effectual to confer upon the diverter the riparian rights in the stream pertaining to the land of the United States abutting thereon, that it gives no right as against other landowners, that this does not take place upon the theory that the water is held by the United States for public use, but because, as proprietor of the land, the United States by that act, granted a part of its property in its land to such diverter. Also they show that the appropriator under the code may obtain a similar right as against riparian rights of the state pertaining to any lands which the state may own along the course of the stream, but that this right may be thus acquired, solely because the state in section 1410 of the Civil Code has so declared, and that this declaration binds the state as to its proprietary lands but does not affect lands of other persons, or water-rights pertaining to such other lands, and that, except its riparian rights pertaining to lands which it owns bordering upon non-navigable streams, the state has no right to the waters thereof and, consequently, cannot dispose of any other rights. The lands bordering on Pinto Lake and its tributaries were all in private ownership at the time of Duckworth's appropriation. Hence, he did not thereby acquire any water-right whatever.

It is obvious that on the last trial the court misunderstood the previous decisions of this court establishing the rights of the parties under the McKinlay deeds. The part of the judgment declaring that Duckworth has the right, over the objections of the defendant, to take one hundred and forty-two miner's inches of water from the lake and apply it to the McKinlay lands nonriparian to the lake, and enjoining defendant from interfering therewith, is directly in the teeth of the decision on the previous appeal. The declaration in the judgment appealed from that this right of Duckworth is subject to the rights of the defendant as also declared by the

judgment, does not cure the error. The rights of the defendant, under the McKinlay deeds, as established by the former decision, include the right to forbid and prevent any use of the water of the lake on any part of the McKinlay land, riparian or nonriparian, except for watering stock and domestic use. In order to make Duckworth's right "subject" to the actual rights of defendant the judgment should have forbidden him to use the water of the lake on the McKinlay lands for irrigation, or for any other than the excepted uses, or elsewhere for any purpose. As grantee of Mrs. McKinlay, subject to the prior deeds, he was estopped to make any use of the water, except as stated, on any part of that land, and because of the fact that the defendant was the owner of lands riparian to the lake, it had the right, on well-settled principles, to enjoin him from using the water of the lake on any other land not also riparian thereto. As he did not on the last trial claim any riparian rights, and could claim none, in any event, save those reserved in said deeds, the injunction should have forbidden any use of the water by him except for domestic use and the watering of stock on the McKinlay land.

There is a finding that "there is a large body of water percolating through a strata of land situate in the bottom of one of the ravines and into said lake at a point where the plaintiff herein diverts water from said lake." It is also found that this body of percolating water "does not originate" on the McKinlay land, nor on the land of the defendant, but on land belonging to parties not concerned in this action. These findings were not in the record of either of the former appeals. It is suggested by the respondent that because of these additional facts the doctrine of the law of the case does not apply. True it is, the doctrine of the law of the case does not apply where the facts appearing upon a new trial are materially different from those on which the decision constituting the law of the case was based. We are, however, satisfied with the law as declared in the former opinions and we think the additional facts do not change the rights of the parties in any degree. The McKinlay deeds do not specifically mention Pinto Lake. They convey all water-rights and privileges belonging to or pertaining to the lands. This would include water percolating therein, regardless of the source from which it came, or of whether it had yet entered the lake, as well as water which had already reached the lake.

And even if the lake had been mentioned and the conveyance related only to the waters thereof, it would have been an estoppel against a taking for use on the land described of water tributary to the lake, whether coming into it as percolating water, or in the form of a visible stream.

There is another new finding to the effect that the consideration of the McKinlay deeds had failed. The deeds are substantially alike in terms. The later one in time, dated June 27, 1885, is signed by the grantees, as well as the grantor. The grantees therein covenant that the grantor "may at all times when water shall be flowing in the said pipe or flume" of the grantees, "adjacent or contiguous" to said land, take and have water therefrom sufficient for all domestic purposes and watering of stock on the premises, and that for that purpose the grantees "will tap their said pipe or flume at such point" as the grantor should desire, to allow her to connect a three-quarter-inch pipe therewith, through which to take water for said uses. The finding states that the flume or pipe mentioned in this covenant was never constructed by the grantees or their successor, the defendant herein. This constitutes the supposed failure of consideration and upon this fact the plaintiff's counsel invoke the doctrine of equity that specific performance will not be allowed where the consideration is inadequate and the contract is unfair, and that he who seeks equity must do equity. There are several answers to this suggestion. First, the deeds do not contain a covenant that the grantees shall construct a pipe or flume over or adjacent to the land described therein; in effect, it merely provides that if they should do so, the grantor should have the privilege of connecting her pipe therewith to obtain water therefrom for domestic use and watering of stock. The failure to construct the pipe or flume on the land was not a breach of any covenant and did not constitute a failure of consideration. Second, the deeds were executed conveyances. The doctrines of specific performance do not apply, the case of the defendant not being for specific performance, but for the protection of a vested right. A failure of consideration, or a breach of a covenant, not amounting to a condition, does not avoid an executed conveyance of property rights such as we have here. Third, there is no finding that Mrs. McKinlay, or her successors, have ever requested the construction of such pipe or flume on the

land described in the deeds, or have ever demanded the privilege of connecting a service pipe with any flume or pipe of the defendant. It may be added that there is no legal evidence of such request or demand and there was no obligation to comply with the request for the construction of a pipe or flume, if there had been a demand therefor.

There is no occasion for another trial of the case. The parties have had ample opportunity, at the three trials already had, to produce all the evidence they have and to prove all the facts bearing upon their respective rights. Indeed the last trial consisted, in large part, of the reading of testimony given upon the previous trials. The new evidence given and the new facts found by the court do not, as we have seen, change the legal rights of the parties. The facts which determine their rights are fully stated in the findings. The ends of justice require that the litigation should be ended and that the proper judgment be entered on the findings made.

The judgment is reversed and the cause is remanded with directions to the court below to enter a judgment declaring that, except for domestic use and watering of stock, the plaintiff has no right to take water from Pinto Lake, either directly therefrom, or indirectly by a diversion from its tributaries or from water entering it by percolation or otherwise, to be used on the land described in the complaint, or on any part thereof, whether riparian to Pinto Lake or its tributaries or not, and perpetually enjoining him from doing so, and in favor of the defendant adjudging its right as herein indicated and for its costs.

Sloss, J., Melvin, J., Lorigan, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.