[L. A. No. 740.   Department Two. — August 7, 1901.]

BEN W. CAVE et al., Respondents, v. GEORGE W. TYLER et al., Defendants.   HANNAH S. SKINNER, Appellant. .

WATER RIGHTS — RIPARIAN OWNERSHIP — LOWER APPROPRIATION — PRESCRIPTION. — A lower appropriation of the waters of a stream by a non-riparian owner can confer no rights upon him by prescription, as against an upper riparian owner, whose rights to the natural flow of the stream over his land is not invaded by the appropriator.

ID. — DIVERSION NOT MADE ON PUBLIC DOMAIN — ACT OF CONGRESS — BURDEN OF PROOF. — The lower appropriator can claim no right to divert the water of the stream, as against the upper riparian proprietor, by virtue of the act of Congress of July 26, 1866, and the act of July 9, 1870, amendatory thereof, if the diversion was made upon private land, or if it is not shown that it was made upon the public domain of the United States. The burden of proof devolved upon the appropriator to show the latter fact.

APPEAL from an order of the Superior Court of San Bernardino County denying a new trial.   John L. Campbell, Judge.

---

[1] 42 Am. Rep. 377.

The facts are stated in the opinion of the court.

H. V. Reardan, and T. R. Archer, for Appellant.

Otis & Gregg, for Respondents.

McFARLAND, J.— This is an action to quiet plaintiffs' title to the right to the use, and a diversion through a ditch called the Mill Creek Zanja, of all the water of a natural stream called Mill Creek, and its tributaries. Judgment went for plaintiffs, and defendant Hannah S. Skinner appeals from an order denying her motion for a new trial.

Under our views of the case, it is not necessary to examine all of the questions presented, and the facts essential to the point of the decision may be briefly stated.

Mountain Home Creek is a tributary of Mill Creek, and Snow Creek is a tributary of Mountain Home Creek. Appellant owns land through which the two latter streams run, and which is riparian to the same. She acquired her right to this land in 1871, from the Southern Pacific Railroad Company, who acquired it in the same year from the United States government. Since 1888 she has used about fifteen inches of water from Mountain Home Creek, and about two inches from Snow Creek, for the necessary irrigation of her land—upon which she grows trees, vines, and vegetables — and for domestic purposes; and this was not an unreasonable amount of water, as the court finds, for such purposes. At this point the land through which these streams run was part of the public domain of the United States. On Mill Creek, about five miles below appellant's land, the respondents and their predecessors have, by means of said Mill Creek Zanja, continuously, since about the year 1853, diverted all the water flowing in said Mill Creek, for irrigation. and other purposes, and their diversion of the water has been open, notorious, and under a claim of right. They claim that by reason of such diversion they have the right to prevent appellant from using any of the water of the tributaries for her purposes as above stated, and the court so decreed.

Respondents do not claim any rights as riparian proprietors. It is not found that they own any land whatever on Mill Creek. They claim solely as appropriators. Of course, under the general law, they acquired no rights by prescription, as against appellant or her predecessors, who were upper riparian proprietors; for a diversion of the water after it had passed her

land, which did not in any way interfere with its natural flow over her land, was not an invasion of her right which she was called upon to notice. (*Hargrave* v. *Cook*, 108 Cal. 72; *Bathgate* v. *Irvine*, 126 Cal. 135.[1])

It is contended, however, that the right of respondents to continue to divert all of the water, and to prevent appellant from using any of it as a riparian owner, is guaranteed to them by section 9 of the act of Congress of July 26, 1866 (14 U. S. Stats. at Large, p. 253), and section 17 of the act amendatory thereof, passed July 9, 1870 (16 U. S. Stats. at Large, p. 218). We do not think that this contention can be maintained.

There is no finding that the diversion was made on the public domain of the United States. There are some things in the record which seem to indicate that the diversion was on private land acquired under a Mexican grant, in which the government never had any estate or interest; but there is no finding on the subject. The burden of showing that the diversion was made on the public domain was upon respondents, if that fact was essential to respondents' asserted right under said laws of Congress, as we think it was. In *Santa Cruz* v. *Enright*, 95 Cal. 105, the defendant claimed as an appropriator of water, and the court said: "It is claimed that the court erred in instructing the jury that the defendant could not acquire any right in the waters of the creek by mere appropriation. This contention cannot be sustained. (*Alta Land Co.* v. *Hancock*, 85 Cal. 222.[2]) It does not appear whether the lands through which the stream ran at the time defendant claims to have acquired his right of appropriation were private or public property. If they were public lands of the United States at that time, we think it devolved upon the defendant to show that fact." In the case at bar, therefore, the respondents are not in the position of one who has invaded the public domain, and attempted to acquire any possessory rights thereon.

Section 9 of the act of 1866 merely provides, "that whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other useful purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and decisions of the courts, the possessors and owners of such vested rights shall be

---

[1] 77 Am. St. Rep. 158.        [2] 20 Am. St. Rep. 217.

maintained and protected in the same"; and section 17 of the act of 1870 merely provides that "all patents granted, or preemptions or homesteads allowed, shall be subject to any vested and accrued water rights . . . as may have been acquired under or recognized by the ninth section of the act of which this act is amendatory." It is clear that these provisions refer only to the interest of those who have gone upon the public domain and done acts of ownership there which the government, as proprietor, could have prevented, but in which it acquiesced. For a long period the general government stood silently by and allowed its citizens to occupy a great part of its public domain in California, and to locate and hold mining claims, water rights, etc., according to such rules as could be made applicable to the peculiar situation; and when there were contests between hostile claimants, the courts were compelled to decide them without reference to the ownership of the government, as it was not urged or presented. In this way — from 1849 to 1866 — a system had grown up under which the rights of locators on the public domain, as between themselves, were determined, which left out of view the paramount title of the government. The acts of 1866 and 1870 were intended merely to expressly recognize and ratify this system. Where they speak of "vested and accrued" rights, they mean, of course, vested and accrued as between the locators; for mere general locators have no vested right as against the government. The government could have ousted these locators by legal proceedings, or, perhaps, by the direct exercise of sovereign force; but it did not do so: it acquiesced in their possession. And by the Congressional acts above noted the government merely said that whenever it had acquiesced in asserted possessory rights on the public domain, which were upheld by local customs and laws and decisions of the courts as between the possessors themselves, it would treat those possessors as though they had acquired prescriptive rights against the government, and would recognize such rights whenever afterwards granting patents to any part of its land. When a person went upon the public domain and there diverted the water of a stream running thereon, he invaded the rights of the government to its own land, and the government could either resist the invasion or acquiesce in it. If it adopted the latter course, then the kind of vested and accrued right grew up which the government by the said acts of Congress promised to protect.

But when a party on private land, to which the government has no title, diverts water from a stream, what vested right does he acquire in the water in the upper part of the stream, where it flows through the government land? Such diversion does not interfere in any way with the flow of the stream in the land of the upper proprietor; it does him no injury; it is no invasion of his right; it gives him no cause of action; it leaves no field for the play of consent or acquiescence; it never ripens into title by prescription. Under what local custom or law, under what "decisions of the courts," was there "a vested and accrued" right of respondents to all the water of the stream, up through the public domain to its head, thus depriving a large section of country above of its source of fertility? We know of none. In all the cases to which we have been referred the diversion was upon the public domain. It may be well to say — although the case is not referred to in the briefs — that there is nothing in *Healy* v. *Woodruff*, 97 Cal. 464, at all conflicting with the views above expressed. It was merely held there, that the plaintiff was not prevented from enlarging his ditch by the fact that since its original construction he had obtained title from the government to "a piece of land through a small portion of which the said Cedar Creek [the stream diverted] runs." There was no contention that the diversion and the ditch were not on the public domain.

Under the above view it is not necessary to notice other points made by appellant. What the rights of the respondents would have been if it had been shown that the diversion had been made on the public domain, and acquiesced in by the government, need not here be considered.

The order appealed from is reversed and a new trial ordered.

Henshaw, J., and Temple, J., concurred.