(December 6, 1919.)

## URANIE SARRET, JULES SARRET, and CAMILLE VIAL, Respondents, v. J. B. HUNTER and W. C. HUNTER, Appellants.

[185 Pac. 1072.]

WATER AND WATER RIGHTS—APPROPRIATION—FINDINGS—ADJUDICATION OF PRIORITIES—TRANSFER OF WATER RIGHT—APPLICATION OF STATUTE — CONTEST BEFORE STATE ENGINEER — EFFECT ON RIGHTS OF LITIGANTS—PERMIT FOR USE ON VACANT PUBLIC LANDS—EFFECT OF COMPLETED APPROPRIATION AS REGARDS TITLE.

1. In an action in the nature of a suit to quiet title to water rights, where the issue joined is one of priority, the court should find specifically the actual appropriation made by each appropriator, the date such appropriation was made, the quantity of water appropriated, and the date of its application to a beneficial use.

2. C. S., sec. 3061, regulating the sale of water rights under certain circumstances, has no application to the transfer of a water right such as the record discloses was made between appellants in this case.

3. In a contest before the state engineer against the issuance of a certificate of completion of irrigation works, the state engineer is authorized by law to pass upon and decide in the first instance whether the permit-holder has complied with the law and the terms of the permit, but his decision thereupon does not deprive any party aggrieved of his right of action in a proper court, and does not conclude the rights of litigants nor control the courts in determining the rights of the parties.

4. A right to the use of water upon vacant lands upon the public domain may be initiated by securing from the state engineer a permit therefor, and when the application for such permit is *bona fide*, coupled with a present intention to apply to a beneficial use the water thus sought to be appropriated, and if the water is so applied during the period limited by the permit, the appropriation is then complete and valid and relates back to the date of the permit, without regard to whether the permit-holder was at the date of said application in any way connected with the legal title to the land upon which he proposed to apply the water.

APPEAL from the District Court of the Sixth Judicial District, for Custer County. Hon. Carl A. Davis, Presiding Judge.

Action in the nature of a suit to quiet title to water rights and adjudicate priorities. Judgment for respondents. *Reversed.*

Clark & Brodhead, Holden & Holden and Hawley & Hawley, for Appellants.

A water right can be acquired by use for a beneficial purpose of the waters of a stream upon lands owned by the United States and with the title to which the user has not connected himself. (Kinney on Irrigation, 2d ed., sec. 725, and authorities cited; *Hall v. Blackman,* 8 Ida. 272, 68 Pac. 19; *Brose v. Boise City R. etc. Co.,* 5 Ida. 694, 51 Pac. 753; *Branca v. Ferrin,* 10 Ida. 239, 77 Pac. 636; *Montpelier Mill Co. v. City of Montpelier,* 19 Ida. 212, 113 Pac. 741; *People v. Maxon,* 1 Ida. 330; *Basey v. Gallagher,* 20 Wall. (U. S.) 670, 22 L. ed. 452; *Atchison v. Peterson,* 20 Wall. (U. S. 507, 22 L. ed. 414; Rev. Stats. U. S., sec. 2339; art. 15, Constitution of Idaho.)

Appellant J. B. Hunter was privileged to sell part of his interest in application for permit No. 4990 to his coappellant herein, W. C. Hunter. (Laws of 10th Session, p. 335, an act entitled, "An act providing for the regulation and control of the sale of water rights, etc.")

"The only effect given by the statute to the acts and decision of the engineer is that any party aggrieved by said decision may, within ninety days from the date of the decision, either appeal to the district court or commence his original action." (*Speer v. Stephenson,* 16 Ida. 707, 102 Pac. 365.)

A permit issued by the state engineer is the initiation of the appropriation but of itself is not an appropriation. (*Marshall v. Niagara Springs Orchard Co.,* 22 Ida. 144, 125 Pac. 208; *Tobey v. Bridgewood,* 22 Ida. 566, 127 Pac. 178.)

Wm. A. Lee, J. M. Stevens and Geo. L. Ambrose, for Respondents.

A right to appropriate the public water of this state cannot be initiated, or perfected, unless it be in connection with

or made appurtenant to other property, to which the appropriator has an absolute or qualified right and upon which, or in connection with which, it is to be used in such manner as will constitute a beneficial use. (Kinney on Irrigation, secs. 707–710, and cases cited; Black's Pomeroy on Water Rights, sec. 48, and authorities cited; Wiel on Water Rights, sec. 166, and cases cited under notes 72 and 73; *Weaver v. Eureka Lake Co.,* 15 Cal. 271; *Nevada County & Sac. Canal Co. v. Kidd,* 37 Cal. 282; *Miles v. Butte Electric etc. Co.,* 32 Mont. 56, 79 Pac. 549; Mills' Irrigation Manual, p. 59; *Drake v. Earhart,* 2 Ida. 750, 23 Pac. 541; *Taylor v. Hulett,* 15 Ida. 265, 269, 97 Pac. 37, 19 L. R. A., N. S., 535; *Low v. Rizor,* 25 Or. 551, 37 Pac. 82; *Toohey v. Campbell,* 24 Mont. 13, 60 Pac. 396, 397; *Nevada Ditch Co. v. Bennett,* 30 Or. 59, 60 Am. St. 777, 45 Pac. 472, 481; *Bailey v. Tintinger,* 45 Mont. 154, 122 Pac. 575, 583; *Sander v. Bull,* 76 Wash. 1, 135 Pac. 489; *Colburn v. Winchell,* 93 Wash. 388, 160 Pac. 1052.)

BUDGE, J.—This is an action in the nature of a suit to quiet title to certain water rights on Upper Cedar Creek in Custer county and to adjudicate the priorities between the parties hereto.

Appellant J. B. Hunter made application for a permit to appropriate 26 second-feet of the waters of said creek on May 1, 1909. This application was later corrected in accordance with directions of the state engineer, and on July 27, 1909, permit No. 4990 was issued to J. B. Hunter in accordance with the application, one-fifth of the work to be completed July 27, 1911, the whole to be completed July 27, 1913, and final proof of use of water to be made July 27, 1916.

After application was made to submit proof of completion of works under this permit, respondents, Uranie Sarret and Jules Sarret filed a contest with the state engineer against the issuance of a certificate of completion of works. This contest was finally abandoned and a certificate of completion of works issued on June 20, 1914. No appeal was taken by the Sarrets from the decision of the state engineer, nor was any action commenced in the district court under the provi-

sions of C. S., sec. 5589, within the 90-day period therein limited.

Both appellants claim priority under this permit. There is evidence that the Hunters jointly purchased a certain ditch and diversion works from one Hill, prior to the application for permit No. 4990, and that their completed works were simply an enlargement and completion of the ditch and works so purchased. Much of the work of enlarging and completing the ditch and diversion works was done by appellant W. C. Hunter. Later a formal conveyance of 6.4 cubic feet of water per second was made by appellant J. B. to W. C. Hunter, in order to enable the latter to make final proof of reclamation on his desert entry, the land described in the pleadings as belonging to him. This transaction between the Hunters is attacked by respondents as in violation of the provisions of C. S., sec. 3061, regulating the sale of water rights under certain circumstances.

Respondent Uranie Sarret claims to have initiated her right under permit No. 8554, issued April 2, 1910, and water license No. 5897, issued by the state engineer on October 15, 1910.

Respondent Jules Sarret claims under permit No. 11312, issued September 16, 1911, and certificate of completion of works of November 8, 1913.

Respondent Camille Vial claims under permit No. 9581, issued September 12, 1910, and water license No. 6615 of August 31, 1914.

All of the lands involved herein were, at the date of the issuance of the various permits to the parties to this litigation, a part of the Lemhi Forest Reserve and unsurveyed public land. The respondents filed homestead entries and the appellants made desert entries.

This action was prosecuted by respondents jointly, the complaint containing three separate causes of action, setting forth the claims of the respondents respectively.

Appellants cross-complained and in addition plead that the first two causes of action, setting forth the claims of the

Sarrets, were barred by the provisions of C. S., chap. 218, art. 2, particularly sec. 5589.

Answers were stipulated, putting the contentions of all the parties in issue, and upon the issues thus made the cause was tried by the court, which, after making certain findings of fact and conclusions of law, entered judgment for respondents, from which this appeal is prosecuted.

It will not be necessary for us to discuss specifically the various assignments of error.

The trial court omitted to find the facts with respect to any of the issues raised by the cross-complaint and the answer thereto. There is no finding as to how much, if any, water appellants were entitled to, or the date of their appropriation, or of the completion of the works, or of the application of water to a beneficial use. The failure of the trial court to find the facts upon these issues was doubtless due to a misconception of the law with respect to appellants' second and main contention hereinafter discussed. In an action to quiet title to water rights, where the issue joined is one of priority, the court should find the actual appropriation made by each appropriator, giving the time the appropriation was made, the quantity of water appropriated and the date of its application to a beneficial use. Otherwise it is impossible for this court to determine whether a proper decree has been entered. The fact that the findings are deficient in this respect necessitates a reversal of the case.

This appeal in its present status presents three questions for our consideration.

Of the transaction between the appellants whereby W. C. Hunter claims to have acquired his right under permit No. 4990, respondents complain that J. B. Hunter's purported sale or transfer of a water right to his brother under this permit was in violation of C. S., sec. 3061, regulating the sale of water under certain circumstances, and therefore void, and further in this connection contend that inasmuch as J. B. Hunter failed to comply with the provisions of this section, his entire appropriation was void, and hence he had no rights which he could convey to W. C. Hunter. The fore-

going statute has no application to such a transfer of a water
right as was made between these appellants.

Appellants' contention that the Sarrets are barred from
questioning the formers' rights under their permit by reason
of their having failed to appeal from the decision of the state
engineer, and having failed to bring an action in the district
court within the 90-day period prescribed by C. S., sec. 5589,
is not well taken. In hearing such a contest, while the state
engineer was authorized to pass upon and decide in the first
instance whether the permit-holder had complied with the
law and the terms of the permit, this proceeding was purely
administrative and not judicial and his decision did not de-
prive any party aggrieved of his right of action in a proper
court. Such decision was neither final nor binding upon the
rights of litigants, and did not control the courts in determin-
ing the rights of the parties.

We come now to appellants' main contention, that the trial
court erred in holding that since at the time appellant J. B.
Hunter obtained permit No. 4990 he had not connected him-
self with the title to the lands upon which he proposed to
divert and use the waters of Upper Cedar Creek, he could not
make a valid appropriation of the water.

Article 15, sec. 3, of the constitution of this state, provides:
"The right to divert and appropriate the unappropriated
waters of any natural stream to beneficial uses shall never
be denied. . . . . "

In determining whether a valid appropriation of water has
been made, or the respective priorities of contending appro-
priators, the law does not concern itself with disputes rela-
tive to the title to the lands for which it is claimed the water
was appropriated. The test of a valid appropriation of
water is its diversion from the natural source and its appli-
cation to a beneficial use. (Kinney on Irrigation, 2d ed., sec.
725.) When one diverts water hitherto unappropriated and
applies it to a beneficial use, his appropriation is complete,
and he acquires a right to the use of such water, which is at
least coextensive with his possession, and so when one makes
application for a permit to divert and appropriate water, the

query is not upon whose lands does 'he intend to apply it, but upon what lands he intends to apply it and to what use does he expect to put it when so applied. His right to possession, or the character of his occupancy as between claimants to the right to the use of the public waters of the state, is not in issue.

Title to land will not be determined in fixing priorities to water between water claimants. One may initiate a right to the use of water upon vacant lands by securing a permit therefor, and when the application for such permit is *bona fide* and coupled with a present intention that the water which it is sought to appropriate under the permit is to be applied to a beneficial use, if the water is so applied during the limitations of the permit, the appropriation is valid and relates back to the date of the permit.

While rights to the use of water in this state are now acquired under our constitution and statutes in harmony therewith, the first water rights acquired were the result of appropriations made long prior to the time when any statute made it possible for the appropriator to connect himself with the legal title to the land upon which the water was to be applied. The rights of appropriators were regulated in the first instance by local customs, and out of these initial sources grew our present laws and rules with respect to irrigation. As was said by the supreme court of California:

"For a long period the general government stood silently by and allowed its citizens to occupy a great part of its public domain in California and to locate and hold mining claims, water rights, etc., according to such rules as could be made applicable to the peculiar situation; and when there were contests between hostile claimants the courts were compelled to decide them without reference to the ownership of the government, as it was not urged or represented. In this way—from 1849 to 1867—a system had grown up under which the rights of locators on the public domain, as between themselves, were determined, which left out of view the paramount title of the government." (*Cave v. Tyler,* 133 Cal. 566, 65 Pac. 1089.)

In 1866, Congress enacted a law which not only recognized but sanctioned the local customs, laws and decisions of courts which had grown up regulating water rights. This law, U. S. Rev. Stats., sec. 2339, reads in part as follows:

"Whenever by priority of possession rights to the use of water for mining, agricultural, manufacturing or other purposes, are vested and accrued and the same are recognized and acknowledged by the local customs, laws and decisions of courts, the possessors or owners of such vested rights shall be maintained and protected in the same, and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed. . . . . "

The framers and adopters of our constitution were familiar with the prevailing customs and rules governing the manner in which water might be appropriated and with the principle involved in the foregoing discussion, and they gave it form and sanction by writing it in the fundamental law of the state. (Const., art. 15, secs. 3, 4 and 5.)

We hold that a water right may be acquired by completion of works under a permit and the application of water to a beneficial use, and that when this is properly done, the priority will date from the issuance of the permit without regard to whether the permit-holder was at the date of his application in any way connected with the legal title to the land upon which he proposed to apply the water.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed. Costs awarded to appellants.

Morgan, C. J., and Rice, J., concur.