[S. F. No. 9330.   In Bank.—June 16, 1921.]

## WILLIAM F. HOLMES et al., Respondents, v. H. L. NAY et al., Appellants.

[1] WATERS AND WATER RIGHTS — RIPARIAN LANDS — DIVERSION BELOW—PRESCRIPTIVE RIGHTS.—By a diversion below riparian lands no rights superior to the riparian rights incident to the land are acquired by prescription.

[2] ID.—DIVERSION BELOW GOVERNMENT LANDS—CONSTRUCTION OF ACT OF CONGRESS OF JULY 26, 1866.—Under the act of Congress of July 26, 1866, the government did not release or cede its rights as riparian owner in favor of one taking water below its lands, since the act was intended simply to validate such diversions as constituted an invasion of the government's rights as riparian owner.

[3] ID.—DIVERSION ON NONRIPARIAN LAND — RIGHT OF RIPARIAN OWNER.—Use by a riparian owner of water on land below is not a use permitted as an incident to the ownership of the upper land, and the right to such use depends upon whatever rights he may have as the owner of the land to which the water is conveyed and where it is used.

[4] ID.—USE OF REASONABLE AMOUNT OF WATER—RIGHT OF RIPARIAN OWNER—EXCESSIVE JUDGMENT.—Assuming that an owner of a tract of land to which he diverted water from another tract in which he had riparian rights, had no right to use the water on the former tract, a judgment, in an action by a lower riparian owner, enjoining him from making any diversion whatever above the point of the plaintiff's diversion, was too broad, since he, as the owner of the riparian tract, had the right to divert a reasonable amount of the water for use on such tract.

[5] ID. — CONVEYANCE OF PORTION OF RIPARIAN LAND — ABSENCE OF RESERVATION — OPEN AND VISIBLE DIVERSION BY GRANTOR — RIGHTS OF GRANTEE. — A deed conveying a part of a tract of riparian land without any reservation whatever in the conveyance of riparian rights operates to convey all the riparian rights incident to the portion transferred which the grantor has at the time of the conveyance, although the grantor is engaged in openly and visibly diverting the water at a point below such land.

1. Nature of riparian rights, and lands to which they attach, notes, 9 Ann. Cas. 1235; Ann. Cas. 1913E, 709; Ann. Cas. 1915C, 1026.
Correlative rights of upper and lower proprietors as to use and flow of water in stream, note, 41 L. R. A. 737.

[6] DEED—RESERVATIONS BY IMPLICATION—EVIDENCE.—Where the owner of land conveys it by deed purporting to convey it fully and without reservations, rights should be held to be reserved in the grantor by implication only where the circumstances very clearly indicate that the grantee knew or should have known that such was the real intention of the grantor.

[7] WATERS AND WATER RIGHTS—DIVERSION OF WATER ABOVE LAND—RIGHT OF RIPARIAN OWNER.—An owner of riparian land is not required, so far as a lower riparian owner is concerned, to make a diversion of water on his land, but can make it above, provided no unreasonable loss of water is caused thereby.

[8] ID.—DIVERSION FROM MAIN STREAM TO LAND IN WATERSHED OF BRANCH—RIGHT OF RIPARIAN OWNER.—A riparian owner may divert water from a main stream at a point on his land and use it on land in the watershed of a branch stream which flows into the main stream before the latter reaches the land of a lower riparian owner.

[9] ID.—MUDDYING AND POLLUTION OF WATER—RIGHT OF COMPLAINT BY LOWER RIPARIAN OWNER.—A lower riparian owner may complain of the muddying and pollution of water by an upper riparian owner, except in so far as it is a reasonably necessary incident of the use of the water by the latter, but the right cannot be exercised in such manner as to injure the lower owner maliciously or unnecessarily.

[10] ID.—LIMITATION OF DIVERSION—BENEFICIAL USE.—No one has the right to divert water otherwise than for a beneficial use.

[11] ID.—WASTAGE OF WATER—RIGHTS OF UPPER AND LOWER RIPARIAN OWNERS.—Since no one has the right to complain even of an unlawful diversion unless he is injured thereby and a riparian owner is not injured by a diversion, lawful or unlawful, which is below both his land and his own point of diversion, a lower riparian owner may complain of any wastage by an upper riparian owner, but the latter may not complain of wastage by the former.

[12] ID.—APPORTIONMENT BETWEEN RIPARIAN OWNERS—DIVERSION FOR OTHER THAN BENEFICIAL PURPOSES—RIGHTS UNAFFECTED.—In apportioning the use of water between riparian owners, it is the reasonable use, or the possibility of reasonable use, for beneficial purposes that alone should be considered, and a share to which one is entitled cannot be affected by the diversion by another of water not used for beneficial purposes.

APPEAL from a judgment of the Superior Court of Sonoma County. Emmet Seawell, Judge. Reversed.

The facts are stated in the opinion of the court.

W. F. Cowan for Appellants.

J. T. Campbell and Geary & Geary for Respondents.

Edward F. Treadwell, *Amicus Curiae.*

OLNEY, J.—This is an appeal by the defendants from a judgment enjoining them from diverting any of the water from a stream known as Yellow Jacket Creek except such as is diverted for stock and domestic use, and also from muddying and polluting the stream. Of the two defendants, one was but an employee or tenant of the other, Nay, and had no rights in the water except in that capacity. We may, then, treat the case as one involving only the respective rights of the two plaintiffs, Holmes and Bernard, on the one side, and the defendant Nay on the other.

The stream rises in a considerable spring on a 101-acre tract belonging to Nay, and which was public land when he acquired it, and flows southwesterly across this land to the boundary line of what was formerly a single large tract constituting what is commonly known as a Spanish or Mexican grant, that is, a tract granted to private owners by the government of California before California was separated from Mexico. The stream, on reaching the grant line, continues southwesterly across the grant, flowing between and constituting the boundary line between a subdivision of the tract on the northwest side of the stream owned by one Folker, and two subdivisions on the southeast side owned by the defendant Nay and the plaintiff Bernard, respectively, that owned by Nay being the one higher up on the stream. The land of the plaintiff Holmes is also a part of the grant and riparian to the stream, but some distance farther down. Nay, in other words, is the owner of two tracts,—first, one on which the stream rises and which was formerly public land, and another below it, which is riparian to the stream and was formerly a part of a larger tract, of which the lands of the two plaintiffs were also a part. At a point on the upper tract Nay diverted water from the stream and conveyed it to the lower tract for use there. It is this diversion which brought on the present litigation. The respective rights of Nay as the owner of these two tracts are quite distinct and should be treated separately.

As we have already stated sufficient of the facts to determine his rights as the owner of the tract which was formerly government land, we may as well take up their discussion at this point.

This tract is, of course, riparian to the stream. As a result of this fact, Nay has the rights of riparian owner, unless in some way they have been lost. The claim of the plaintiffs is that those rights were lost by reason of the fact that long before Nay acquired it and it ceased to be public land, the predecessor in interest of the plaintiffs had diverted all the stream at a point below and put it to beneficial use, and that such diversion and use have been continuously maintained ever since. [1] It is, however, settled law in this state that by a diversion below riparian lands no rights superior to the riparian rights incident to the land are acquired by prescription. (*Hargrave* v. *Cook*, 108 Cal. 72, [30 L. R. A. 390, 41 Pac. 18]; *Bathgate* v. *Irvine*, 126 Cal. 135, [77 Am. St. Rep. 158, 58 Pac. 442]; *Cave* v. *Tyler*, 133 Cal. 566, [65 Pac. 1089]; *Walker* v. *Lillington*, 137 Cal. 401, [70 Pac. 282].) The reason for this rule is that a riparian owner is not concerned with what is done with the water after it passes his land, and he cannot complain of any diversion made below, and, since he cannot complain, no rights can be acquired by prescription because he does not complain. [2] But it is claimed by the plaintiffs that because the defendant's land was public land at the time the diversion was made, those making the diversion below acquired, by virtue of section 9 of the act of Congress of July 26, 1866, (14 Stat. 253, [9 Fed. Stats. Ann., 2d ed., p. 1349; U. S. Comp. Stats., sec. 4647]), a right superior to the riparian rights incident to the land; in other words, that by this statute the government released or ceded its rights as riparian owner in favor of anyone taking water from the stream, even one taking it entirely below the land of the government. But the question so presented as to the effect of the act of Congress was also presented in *Cave* v. *Tyler*, 133 Cal. 566, [65 Pac. 1089], and there decided directly contrary to the contention of the plaintiffs. It is unnecessary to repeat the discussion found in the opinion in that case. Suffice it to say that the reasoning of the opinion is, in brief, that the act of Congress was intended simply to validate such appropriations or diversions as constituted an invasion of the govern-

ment's rights as a riparian owner, and that since a diver-
sion below its lands did not constitute an invasion of its
rights and was something of which the government could
not complain, there was no release or cession of its rights
under the statute mentioned. This decision is conclusive
as to the point that the defendant in the present case has
still the riparian rights incident to the ownership of the
101-acre tract he acquired from the government. Such
rights, of course, include the right to a reasonable use of
the water of the stream on any portion of the tract which
is riparian to it, but not elsewhere, for stock, domestic, and
irrigation purposes. [3] It should be said, however, that
the use to which Nay was putting the water, a use not on
the 101-acre tract, but on the tract below it, was not a use
permitted as an incident of the ownership of the 101-acre
tract, and that his right to such use must depend upon
whatever rights he may have as the owner of the tract to
which the water is conveyed and where it is used. [4]
But, assuming for the moment that as the owner of the
latter tract the defendant had no right to use the water
upon it, so that the plaintiffs had the right to enjoin such
use, the judgment against the defendant is yet too broad.
It does not enjoin such use, but, with a minor exception
not here material, it enjoins the defendant from making any
diversion whatever above the point of the plaintiffs' diver-
sion. The defendant, however, as the owner of the 101-acre
tract, had the right to divert a reasonable amount of the
water for use on that tract, if at any time in the future he
should desire to do so, and the judgment should not, as it
does, foreclose him from the exercise of this right.

Coming now to the question of the defendant's rights
as owner of the tract which was formerly a part of the
Mexican grant, it is evident that, since the land is riparian
to the stream, the defendant has the right to a reasonable
use thereon of the water of the stream unless in some way
the riparian rights, which are an incident of the ownership
of the land, have been lost. It is also evident that these
rights have not been lost by prescription. This is evident
because the plaintiffs' point of diversion is below even this
part of the defendant's land, so that the case comes within
the rule already stated that a diversion below riparian lands
gives no right by prescription against the riparian rights

incident to the land, for the simple reason that. such taking is not an invasion of those rights.

Since the riparian rights incident to the defendant's land could not have been lost by prescription, the only other method upon the facts of this case by which they could have been lost is a voluntary transfer or cession of them by one who was at the time the owner of the land. It is not claimed that there was any such transfer or cession after the severance of this particular tract from the larger tract of which both it and the lands of the plaintiffs were originally a part. The question then reduces itself to whether or not there was such transfer or cession either at the time of that severance or prior thereto. It is claimed in effect that it did occur at the time of the severance. The deed by which the owner of the larger tract severed from it and conveyed to another ownership the land now owned by the defendant did not reserve from its operation any riparian rights incident to the land. On the face of the deed, therefore, those rights were conveyed as a part of the land and there was no withholding or cession of them. But it is claimed that in view of the fact that the stream, and the whole stream, was at that time being diverted for use on other lands, including those of the plaintiffs, and such diversion was open and visible and must have been known to the grantee, the case comes within the familiar rule stated in *Cheda* v. *Bodkin*, 173 Cal. 7, [158 Pac. 1025], that "where the owner of two tenements sells one of them, or the owner of the entire estate sells a portion of it, the purchaser takes the tenement or portion sold with all the benefits and with all the burdens that appear at the time of the sale to belong to it as between it and the property which the vendor retains. . . . Where the owner of one heritage consisting of several parts has so adapted them that one derives a benefit from the other, when he sells one of them without making mention of the incidental burdens of one in respect to the other, an implied understanding arises that the burdens and correlative advantages shall continue as before the separation of the title."

[5] There would be no doubt about the application of this rule if it were the fact that the diversion in question, an open and plainly apparent one, had amounted to an imposition of a burden by the owner of the whole tract

upon the portion severed from it for the benefit of other land retained by him. It would also seem that it might well be that if the diversion had been above the portion severed by conveyance so that the stream when it came to that portion was diminished, and if also the extent of the diversion was such as to make it apparent that it exceeded what might be diverted under any riparian right, a burden would have been imposed upon the portion conveyed for the benefit of lands retained. But where, as here, the diversion was below the land conveyed so that the stream as it flowed by it was wholly unaffected, we do not see how it can be fairly said that any burden was imposed upon that portion of the land for the benefit of other portions. So far as that land is concerned, it is wholly unaffected by the diversion. Upon this point the case, as it seems to us, is wholly analogous to those cases where a right by prescription was claimed against a riparian owner because of a diversion below his land, and that the same reasoning by which such right was denied leads to the conclusion here that the grantee of the land would not take it with its riparian rights subordinated to a diversion below which did not affect his land. [6] It should be said also that where the owner of land conveys it by deed purporting to convey it fully and without reservations, rights should be held to be reserved in the grantor by implication only where the circumstances very clearly indicate that the grantee knew or should have known that such was the real intention of the grantor. It would be going very far, indeed, to hold that where riparian land is conveyed without any reservation whatever, the riparian rights incident to it yet do not pass, for the reason that the grantor was openly and visibly diverting the water at a point below. Presumably in such a case it was the intention that full effect be given to the deed and that the diversion below be subject to the riparian rights ostensibly conveyed rather than the contrary. Our conclusion, then, is that the present case does not come within the rule of *Cheda* v. *Bodkin,* and that the deed by the owner of the whole tract conveying the portion now owned by the defendant operated to convey all the riparian rights incident to the portion conveyed which the grantor had at the time of conveyance. He, of course, had all of such rights unless they had been previously ceded or trans-

ferred, and the question of whether they had been or not is the next question in the case.

The conveyance to the defendant's immediate predecessor in interest was subsequent to the conveyances of the parcel now owned by the plaintiff Bernard and of the parcel now owned by one Folker, on the opposite side of the stream, from both the Bernard and the Nay [the defendant] parcels. As between the Folker and Bernard parcels, the former was conveyed first. The deed to the Bernard parcel does not purport to grant more than the land itself, so that by it no transfer or cession of riparian rights incident to the land retained by the grantor was worked. In other words, the riparian rights incident to the Nay parcel, which was retained by the grantor, were unaffected by the deed to the Bernard parcel, and were retained in full by the grantor as an incident of his continuing ownership.

The same, however, is not true of the deed to the Folker place. It not merely conveyed the land, but granted the right to one-half the water in the creek. There was here a definite cession of riparian rights. The grantor could not thereafter insist upon the right to divert water for use on the riparian lands retained by him, of which the Nay place was a part, to the impairment of the right which he had granted to the grantee of the Folker place. (*Duckworth* v. *Watsonville etc. Co.*, 150 Cal. 520, [89 Pac. 338].) He could, of course, take the one-half of the water not so granted and he could take it from the stream where he pleased, either above or below the Folker point of diversion, but if he took it above, the owner of the Folker place would, to the extent to which such diversion above diminished the flow past his point of diversion, have the right to take proportionately more than one-half of the flow at that point. As the result of these conveyances, then, and there is nothing else which can be claimed to be a transfer or cession of the riparian rights incident to the defendant's land, the situation is that, as between Nay and Bernard, each has the full riparian rights incident to his land, and, as a part of these, has the right to have the use of the water apportioned between him and the other upon that basis, but that as between them and Folker, their riparian rights have been limited to an interest in one-half of the flow of the stream. The result is that if the owner of the Folker place insists

upon his right, the use of the water between Nay and Bernard must be apportioned as if the flow of the stream were just half of what it actually is.

The plaintiff Holmes is in exactly the same situation as the plaintiff Bernard. He acquired his land from the original owner of the whole tract subsequent to the conveyances of the other parcels. Except as limited by the Folker grant, he acquired his parcel with the full riparian rights incident to it, and as limited by that grant, he, Bernard, and Nay are as between themselves riparian owners on a stream in legal effect one-half of its actual size.

To the above outline of the rights of the parties there is an exception whose mention we have reserved until this point in order to simplify the discussion. This exception arises from the fact that either in the deed to the Folker place containing the grant of one-half of the stream or by contemporaneous agreement between the grantor and grantee there was reserved or given the grantor the right to take from the water diverted by Folker, and after it had been diverted, one inch for use on the Bernard place and two inches for use on other lands of the grantor. The right to some, at least, of the latter two inches is now appurtenant to the land of the plaintiff Holmes. The rights to this inch and two inches, respectively, were rights in the water which Folker was given the right to divert, so that to the extent of these rights the owners of the lands to which the rights became appurtenant became co-owners, as it were, with Folker in the right granted him. The two plaintiffs as the owners of such lands have, therefore, a direct interest in the right granted Folker and for that reason have the right to complain of any diversion of the defendant which encroaches upon the Folker right, at least to the extent to which such diversion affects their receipt of water under that right. The final situation, then, as to the fundamental rights of the parties to this action, omitting the rights of Nay as the owner of the uppermost 101-acre tract which he acquired from the government, which rights we have previously discussed, is that each of the plaintiffs has the right to complain of any diversion by Nay whereby the diversion under the Folker grant of the full one-half of the natural flow of the stream without any diversion by Nay is prevented, at least to such an extent as to deprive them

of their one inch and two inches, respectively, and that as
to the other one-half of the stream, all three parties are in
the position simply of riparian owners entitled to have the
use of the water for stock, domestic, and irrigation pur-
poses upon their riparian lands reasonably apportioned be-
tween them.

The judgment appealed from is not in conformity with
the rights of the parties as so outlined, and the findings
are not such as to make it possible to direct a judgment
which does conform to them. A new trial is, therefore,
necessary. For the purposes of it, there are a few minor
points which should be determined. We have said that the
rights of Nay as the owner of the 101-acre tract are con-
fined to the use of the water on that tract, and that such
rights do not include the right to use the water on the
parcel of the Mexican grant which he owns. But this does
not mean that he cannot divert water on the 101-acre tract
and carry it to the other tract and there use it. It means
only that he cannot do so under his rights as owner of the
101-acre tract. [7] But the owner of riparian land is not
required, so far as a lower riparian owner is concerned,
to make his diversion on his land. He can make it above
if he wishes, provided no unreasonable loss of water is caused
by his so doing. (*Turner* v. *James Canal Co.*, 155 Cal.
82, [132 Am. St. Rep. 59, 17 Ann. Cas. 823, 22 L. R. A.
(N. S.) 401, 99 Pac. 520].) The defendant Nay, then, has,
to the extent to which he has the right to divert water as
the owner of what was once a part of the Mexican grant,
the right to go off that land and make a diversion and
convey water to it for use thereon.

[8] It seems, also, that part of Nay's land lies between
the main stream and a branch, the latter coming into the
former before the stream reaches the land of either of the
plaintiffs, so that some of Nay's land is in the watershed
of the main stream above where the branch comes in and
some is in the watershed of the branch. It seems, also,
that Nay is taking the water from the main stream and
using at least a portion of it on land in the watershed of the
branch. This is complained of, but this he has the right
to do. Both watersheds are but parts of the watershed of
the stream as it passes the plaintiffs' lands, and the rule that
the owner of a tract of riparian land may not convey and

use the water without the watershed of the stream has no application. The water is not conveyed and used without the watershed of the stream which passes the plaintiffs' lands, and that stream is the stream in which the plaintiffs have rights. They have no rights in the main stream and the branch above as separate streams. The situation is the exact converse of that presented in *Anaheim etc. Co.* v. *Fuller*, 150 Cal. 327, [11 L. R. A. (N. S.) 1062, 88 Pac. 978], where the junction of the stream and the branch was below the lands of the complaining riparian owner. Any other rule would be wholly impracticable and would, in many cases, practically destroy the riparian rights of an upper owner.

[9] The plaintiffs also complain of the muddying and pollution of the water by the defendant. They have the right to complain of this except in so far as it is a reasonably necessary incident of the use of the water by the defendant. He has the right to use the water and cannot be prevented from using it because of the fact that necessarily such use may somewhat impair the quality of the water. But he cannot exercise his right in such manner as to injure those below him maliciously or unnecessarily. The case certainly comes under the principle of the familiar maxim, *Sic utere tuo, ut alienum non laedas.* It may be that where the question is one of a reasonable manner of use as between an upper and a lower riparian owner, a manner of use which perhaps would not violate the principle of the maxim quoted as between strangers would yet be unreasonable as between those occupying the relation to each other of riparian owners on the same stream. While the facts of the present case suggest this question, it is not definitely presented by them and is not argued by counsel, and we do not decide it. We mention it merely to avoid the possibility of this opinion being taken to establish as the law of the case that the freedom of the defendant in his manner of using the water is limited only by the principle of the maxim quoted.

Considerable appears in the evidence and much is said in the briefs about the wasting of water on both sides. [10] No one has the right to divert water otherwise than for a beneficial use. This is true even as to a diversion made under a grant. In other words, the Folker grant must be

read with the implied condition that it was a grant of the right to divert water for beneficial uses and not otherwise. [11] But, on the other hand, no one has the right to complain even of an unlawful diversion unless he is injured thereby, and it is apparent that a riparian owner is not injured by a diversion, lawful or unlawful, which is below both his land and his own point of diversion. This last is the present situation as between the defendant and the diversions by the plaintiffs. The result is that, while the plaintiffs may complain of any wastage by the defendant, since both their lands and their point of diversion under the Folker grant are below the defendant's diversion, the defendant may not complain of wastage by them, since he is not injured by it. [12] Of course, in apportioning the use of the water between the parties in accord with their rights as riparian owners, it is the reasonable use, or the possibility of reasonable use, for beneficial purposes that alone should be considered, and if the plaintiffs have been diverting water which they did not use for a beneficial purpose, the share of the water to which the defendant may be entitled cannot be affected thereby.

Judgment reversed.

Shaw, J., Wilbur, J., Lennon, J., Angellotti, C. J., Sloane, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred, except Wilbur, J., and Lennon, J., who were absent.